# BEFORE THE JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

In re:

MDL Docket No. 1850

PET FOOD PRODUCT LIABILITY
LITIGATION

*C07-411*

## MOVANT SEXTON'S FIRST NOTICE
## OF POTENTIAL TAG-ALONG ACTIONS

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Stuart C. Talley
**KERSHAW, CUTTER & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

[Additional Counsel Listed on Signature Page]

Attorneys for Individual and Representative
Plaintiff, *Shirley Sexton*

07-CV-00411-AF

1

Dockets.Justia.com

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

1.      Please take notice that on March 26, 2007, Shirley Sexton, plaintiff in the action

entitled *Shirley Sexton v. Menu Foods Income Fund, Menu Foods, Inc., a New Jersey*

*Corporation, and Menu Foods Midwest Corporation, a Delaware corporation*, Civil

Action No. 07-cv-01958-GHK (AJWx) ("Movant") filed a petition under 28 U.S.C.

Section 1407 seeking transfer and coordination of the following cases:

### United States District Court Central District of California

Shirley Sexton v. Menu Foods Income Fund; Menu Foods, Inc., a New Jersey
Corporation; and Menu Foods Midwest Corporation, a Delaware corporation
Case No. 07-CV-01958-GHK-AJW; The Honorable George H. King

### United States District Court Eastern District of Tennessee

LizaJean Holt v. Menu Foods, Inc.
Case No. 07-CV-00094-TWP; The Honorable Judge Thomas W. Phillips

### United States District Court Western District of Arkansas

Charles Ray Sims and Pamela Sims v. Menu Foods Income Fund; Menu Foods
Midwest Corporation; Menu Foods South Dakota Inc.; Menu Foods, Inc.; Menu
Foods Holdings, Inc.
Case No. 07-CV-05053-JLH; The Honorable Judge Jim Larry Hendren

### United States District Court Northern District of Illinois

Dawn Majerczyk v. Menu Foods, Inc., a New Jersey Corporation
Case No. 07-CV-01543-WRA; The Honorable Wayne R. Anderson

### United States District Court Western District of Washington

Tom Whaley v. Menu Foods, Inc., a foreign corporation; The Iams Company, a
foreign corporation; Dog Food Producers Numbers 1-50; and Cat Food Producers
1-40
Case No. 07-CV-00411-RSM; The Honorable Richardo S. Martinez

### United States District Court District of New Jersey

Jared Workman, and Mark and Mona Cohen v. Menu Foods Limited; Menu
Foods, Inc.; and Menu Foods Midwest Corporation
Case No. 07-CV-01338-NLH; The Honorable Judge Noel L. Hillman

2.    The Movant is aware that the following potential tag-along actions have

been filed:

### United States District Court Central District of California

Dawn Howe v. Menu Foods, Ltd., Menu Foods, Inc.; Menu Foods Midwest
Corp.; Menu Foods Income Fund; Menu Foods South Dakota, Inc.; Menu Foods
Holdings, Inc.; and Menu Foods Operating Trust
Case No. 07-CV-0260-SJO-PLA; The Honorable Judge S. James Otero

### United States District Court Northern District of California

Sherry Ingles v. Menu Foods, Inc.; Menu Foods Income Fund; Menu Foods a
Midwest Corporation; and Menu Foods South Dakota Inc.
Case No. 3:07-CV-01809-MMC; The Honorable Maxine M. Chesney

### United States District Court Western District of Arkansas

Richard Scott and Barbara Widen v. Menu Foods; Menu Foods Income Fund;
Menu Foods Gen Par Limited; Menu Foods Limited Partnership; Menu Foods
Operating Partnership; Menu Foods Midwest Corporation; Menu Foods South
Dakota; Menu Foods, Inc.; Menu Foods Holdings, Inc.; Wal-Mart Stores, Inc.
Case No. 5:07-CV-05055-RTD; The Honorable Judge Robert T. Dawson

### United States District Court Western District of Washington

Suzanne E. Johnson and Craig R. Klemann v. Menu Foods, a foreign corporation
Case No. 2:07-CV-00455-JCC ; The Honorable Judge John C. Coughenour

Stacey Heller; Toinette Robinson; David Rapp; Cecily Mitchell; and Terrence
Mitchell v. Menu Foods, a foreign corporation
Case No. 2:07-CV-00453-JCC; The Honorable Judge John C. Coughenour

Audrey Kornelius and Barbara Smith v. Menu Foods, a foreign corporation
Case No. 2:07-CV-00454-MJP; The Honorable Judge Marsha J. Pechman

Michele Suggett and Don James v. Menu Foods, a foreign corporation; Iams
Company, a foreign corporation; Eukanuba, a foreign corporation,
Dog Food Producers Numbers 1-100; Cat Food Producers 1-100; Does 1-100
Case No. 2:07-CV-00457-RSM; The Honorable Ricardo S. Martinez

**United States District Court District of New Jersey**

Larry Wilson v. Menu Foods Income Fund; Menu Foods, Inc., a New Jersey Corporation; Menu Foods Holdings, Inc.; and Menu Foods Midwest Corporation, a Delaware Corporation
Case No. 1:07-CV-01456-NLH-AMD; The Honorable Judge Noel L. Hillman

Suzanne Thomson and Robert Trautmann v. Menu Foods Income Fund (An unincorporated entity organized under the laws of the Province of Ontario, Canada); Menu Foods, Inc. (A corporation organized under the laws of the State of New Jersey); John Does 1-100 (Fictitious names for the person(s) and/or entities responsible for the damages complained of by the Plaintiffs herein)
Case No. 2:07-cv-01360-PGS-RJH; The Honorable Judge Peter G. Sheridan

Linda Tinker v. Menu Foods, Inc.
Case No. 1:07-CV-01468-NLH-AMD; The Honorable Judge Noel L. Hillman

Paul Richard and Jennifer Richard (husband and wife) and Charles Kohler and Alicia Kohler (husband and wife) v. Menu Foods Income Fund, a Canadian open-ended trust; Menu Foods, Ltd., a Canadian corporation; Menu Foods Holdings, Inc., a Delaware corporation; Menu Foods, Inc., a New Jersey corporation; Menu Foods Midwest Corporation, a Delaware corporation; Menu Foods South Dakota, Inc., a Delaware corporation; ABC Partnerships; XYZ Corporations
Case No. 1:07-CV-01457-NLH-AMD; The Honorable Judge Noel L. Hillman

Janice Bonier; Guy Britton; and Tammy Matthews v. Menu Foods, Inc.; Menu Foods Income Fund; and Menu Foods Midwest Corp.
Case No. 1:07-CV-01477-NLH-AMD; The Honorable Judge Noel L. Hillman

Alexander Nunez v. Menu Foods, Ltd.; Menu Foods, Inc.; Menu Foods Midwest Corp.; Menu Foods Income Fund; Menu Foods South Dakota, Inc.; and Menu Foods Holdings, Inc.
Case No. 1:07-CV-01490-NLH-AMD; The Honorable Judge Noel L. Hillman

Julie Hidalgo v. Menu Foods Inc.; Menu Foods Income Fund; Menu Foods Midwest Corporation; and Menu Foods South Dakota, Inc.
Case No. 1:07-CV-01488-NLH-AMD; The Honorable Judge Noel L. Hillman

Troy Gagliardi v. Menu Foods Inc.; Menu Foods Income Fund; Menu Foods Midwest Corporation; and Menu Foods South Dakota, Inc.
Case No. 1:07-CV-01522-NLH-AMD; The Honorable Judge Noel L. Hillman

**United States District Court Southern District of Florida**

Christina Troiano v. Menu Foods, Inc., Menu Foods Income Fund
Case No. 0:07-CV-60428-JIC; The Honorable Judge James I. Cohn

**United States District Court District of Rhode Island**

Carol Brown v. Menu Foods, Inc.; Menu Foods Income Fund; Menu Foods
Midwest Corp.; and Menu Foods South Dakota, Inc.
Case No. 1:07-CV-00115-ML-LDA; The Honorable Judge Mary M. Lisi

**United States District Court District of Connecticut**

Lauri A. Osborne v. Menu Foods, Inc.
Case No. 3:07-CV-00469-RNC; The Honorable Judge Robert N. Chatigny

**United States District Court Western District of Wisconsin**

Jacqueline Johnson v. The Proctor & Gamble Co.; Menu Foods, Inc.; Menu
Foods Income Fund; The Iams Company
Case No. 07-C-0159-C; The Honorable Judge Barbara B. Crabb

**United States District Court District of Maine**

Mara Brazilian v. Menu Foods Income Fund, a Canadian Corporation with its
principal place of business in Ontario, Canada; Menu Foods, Ltd., a Canadian
corporation with its principal place of business in Ontario, Canada; Menu Foods,
Inc., a New Jersey corporation with its principal place of business in Pennsauken,
New Jersey and a wholly owned subsidiary of Menu Foods, Ltd.; Menu Foods
Midwest Corp., a Delaware Corporation with its principle place of business in
Emporia, Kansas and a wholly owned subsidiary of Menu Foods Ltd.; and The
Iams Company, an Ohio Corporation with its principal place of business in
Dayton, Ohio
Case No. 2:07-CV-00054-GZS; The Honorable Judge George Z. Singal

**United States District Court District of Nevada**

Marion Streczyn v. Menu Foods Income Fund, a foreign corporation; Menu
Foods Inc., a New Jersey corporation; and Does I-X, inclusive
Case No. 3:07-CV-00159-LRH-VPC; The Honorable Larry R. Hicks

3.    These actions arise from the same facts and assert similar claims as the pending

actions that are the subject of Movant's petition and should, therefore, be designated as a

Tag-Along Actions pursuant to Panel Rule 7.5. True and correct copies of the complaints

in the *Howe, Ingles, Widen, Johnson, Heller, Kornelius, Suggett, Wilson, Thomson,*

*Tinker, Richard, Bonier, Nunez, Hidalgo, Gagliardi, Troiano, Brown, Osborne, Johnson,*

*Brazilian*, and *Streczyn* actions are attached hereto as Exhibits A through U, respectively.

Dated:  April 5, 2007             **WEXLER TORISEVA WALLACE LLP**

By:  _____
                    MARK J. TAMBLYN

                    1610 Arden Way, Suite 290
                    Sacramento, California 95815
                    Telephone:  (916) 568-1100
                    Facsimile:  (916) 568-7890

                    Kenneth A. Wexler
                    **WEXLER TORISEVA WALLACE LLP**
                    One North LaSalle Street, Suite 2000
                    Chicago, Illinois 60602
                    Telephone: (312) 346-2222
                    Facsimile:  (312) 346-0022

                    Stuart C. Talley
                    **KERSHAW, CUTTER & RATINOFF, LLP**
                    980 9th Street, 19th Floor
                    Sacramento, California 95814
                    Telephone: (916) 448-9800
                    Facsimile: (916) 669-4499

                    Attorneys for *Plaintiff/Petitioner*

Movant Sexton's First Notice of Potential Tag-Along Actions

# EXHIBIT A

1   MILBERG WEISS & BERSHAD LLP
    JEFF S. WESTERMAN (SBN 94559)
2   SABRINA S. KIM (SBN 186242)
    One California Plaza
3   300 South Grand Ave., Suite 3900
    Los Angeles, CA 90071
4   Telephone: (213) 617-1200
    Facsimile: (213) 617-1975
5   Email: jwesterman@milbergweiss.com
    skim@milbergweiss.com
6   .

7   Attorneys for Plaintiffs

8

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12             WESTERN DIVISION

                CV07 - 0 2 0 6 0 SJO(PLAx)

13  Dawn Howe, on behalf of herself and all )   CASE NO.
    others similarly situated,               )
14                                            )   **CLASS ACTION COMPLAINT**
                    Plaintiff                 )
15                                            )
             v.                               )
16                                            )
    MENU FOODS LIMITED; MENU                  )
17  FOODS INC.; MENU FOODS                    )
    MIDWEST CORPORATION; MENU                 )
18  FOODS INCOME FUND; MENU                   )
    FOODS SOUTH DAKOTA, INC.; and            )   **DEMAND FOR JURY TRIAL**
19  MENU FOODS HOLDINGS, INC.,                )
    are Menu foods operating dus             )
20                  Defendants.               )

21

22

23

24

25

26

27

28

DOCS\398912v1

1    Plaintiff Dawn Howe ("Plaintiff"), individually and on behalf of all others
2  similarly situated, files this Class Action Complaint against Defendants Menu
3  Foods, Inc., a New Jersey Corporation, Menu Foods Income Fund, a foreign
4  corporation, and its affiliated entities (collectively "Defendants"). Plaintiff alleges
5  the following based on personal knowledge with respect to her own experiences,
6  and otherwise based on information and belief.

7                                    **INTRODUCTION**

8    1.    This is a nationwide class action lawsuit brought on behalf of Plaintiff
9  and others similarly situated who purchased contaminated pet food products
10  produced, manufactured, and/or distributed by Defendants that caused injury,
11  sickness, and/or death to Plaintiff's pets and those of other pet owners across the
12  nation (the "Products"). The Products were marketed and sold under various brand
13  names, including "Special Kitty" purchased by Plaintiff.

14    2.    Defendants are the nation's leading manufacturer of pet food sold by
15  retailers, pet specialty stores, and other wholesale and retail outlets including Wal-
16  Mart, Safeway, Petco, PetSmart Inc., and Kroger.

17    3.    Defendants developed, manufactured, marketed, advertised, and
18  warranted their Products as safe and fit for the ordinary purpose for which they
19  were used, i.e., household pet consumption, free of defects. Defendants intended
20  to, and did, place the Products in the steam of commerce to be sold to Plaintiff and
21  other pet owners in California and throughout the United States.

22    4.    Defendants knew and have admitted that the Products are not only
23  defective but poisonous. On March 16, 2007, Defendants initiated a recall of 60
24  million cans and pouches of "cuts and gravy" style dog and cat food manufactured
25  between December 3, 2006 and March 6, 2007. The recall was limited to such
26  products manufactured at Defendants' New Jersey and Kansas facilities.

27

28
                                         - 1 -

DOCS\398912v1

5. On March 23, 2007, New York state health officials reported laboratory tests of the Products found aminopterin (rat poison) at levels of at least 40 parts per million. The pet food samples were tested by the New York State Animal Health Diagnostic Center at Cornell University and the New York State Food Laboratory, which identified aminopterin as the toxic substance.

6. As of March 24, 2007, Menu Foods' executives state they have no idea how or when the rat poison got into their products at their plants in Kansas and New Jersey.

7. After 14 confirmed pet deaths from kidney failure, countless additional cases of very sick animals with similar symptoms, soaring projections of pet death and sickness in the thousands by veterinary professionals, over 4,000 consumer complaints and inquiries to the Food and Drug Administration (FDA), and despite Defendants' own product testing last month that resulted in as many as one in six animal deaths, Defendants continue to produce pet food at the two contaminated plants.

8. By at least February 20, 2007, almost a month before issuing its recall on March 16, Defendants knew about complaints from pet owners reporting that the food had made their pets sick. By February 27, Defendants started testing its product on 40 to 50 animals. By March 6, Defendants identified a likely source of contamination, *i.e.,* a new supplier of wheat gluten (an ingredient used to make "gravy" for some of its pet-food brands). The company alerted the FDA of its test results the week of March 12, and issued a product recall that Friday, March 16. Thus, Defendants knew about the potential for widespread problems almost a month before the recall on March 16. And by March 6, they knew their Products were killing and sickening pets across the nation.

9. Rather than timely warning the public about the suspected and later confirmed dangers of the Products, Defendants delayed announcing the recall to

- 2 -

1 minimize the financial fallout from the contamination. Defendants had no choice
2 but to issue a recall on March 16, because by then, Defendants' biggest customer
3 (for which it contract manufacturers and which accounts for 11% of annual
4 revenue) had initiated its own recall of Defendants' Products.

5     10. As a result of Defendants' negligent manufacture of the defective
6 Products and delay in warning affected pet food owners, Plaintiff and members of
7 the Class have unnecessarily suffered damages in the form of expensive veterinary
8 bills, loss of pets (and the cost of putting the animal to sleep and burial services),
9 and to the purchase price of the Products which they would have never bought had
10 they known they were defective.

11 **PARTIES**

12     11. Plaintiff is a resident of Paducah, Kentucky. Plaintiff purchased the
13 recalled "Special Kitty" Product and fed them to her cats, resulting in sickness
14 and/or death to her cats. Plaintiff brings this action, pursuant to Rule 23 of the
15 Federal Rules of Civil Procedure, on her own behalf and as a representative of a
16 class of persons consisting of all persons in the United States who purchased
17 and/or incurred damages (medical and other expenses) by using the Products made
18 and/or distributed by Defendants and later recalled.

19     12. Defendant MENU FOODS INCOME FUND is an unincorporated
20 open-ended trust established under the laws of the Province of Ontario with its
21 principal place of business in Ontario, Canada. The Income Fund controls, directly
22 or indirectly, the other Defendants engaged in the manufacture and distribution of
23 pet food products, including the Products.

24     13. Defendant MENU FOODS MIDWEST CORP. is a Delaware
25 corporation affiliated with the other Defendants and involved in their activities
26 relating to the Products.

27

28

- 3 -

DOCS\398912v1

1    14.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware
2 corporation is affiliated with the other Defendants and involved in their activities
3 relating to the Products.

4    15.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware
5 corporation affiliated with the other Defendants and involved in their activities
6 relating to the Products.

7    16.    Defendant MENU FOODS, INC. is a New Jersey corporation
8 affiliated with the other Defendants and involved in their activities relating to the
9 Products.

10    17.    Defendant MENU FOODS LIMITED manufactures and sells wet pet
11 food products to retail customers and brand owners in North America. MFL owns
12 the Kansas and New Jersey manufacturing plants that produced the Products now
13 subject to recall. It is affiliated with the other Defendants and involved in their
14 activities relating to the Products.

15    18.    DOES 1-100 are individuals and entities, the relationship of which to
16 the specifically named defendants is such as to justify disregarding the
17 separateness of those entities for purposes of liability, whether by piercing of the
18 corporate veil or by actual or apparent authority of each to act on behalf of one
19 another or because of a conspiracy between them to do the things herein alleged.
20 All defendants, including DOE defendants are agents for each other, or otherwise
21 directly or vicariously responsible for their actions, either by agreement or by
22 operation of law, including, inter alia, the laws applicable to general partnerships,
23 piercing of the corporate veil, actual or apparent agency, and conspiracy.

24    19.    The true names and capacities of Defendants sued as DOES 1-100,
25 inclusive, are currently unknown to Plaintiffs. Each of the Defendants designated
26 herein as a DOE is legally responsible in some manner for the unlawful acts
27 referred to herein. Some or all DOE defendants are controlled by, control, or have

28

- 4 -

1  a common nucleus of control with one or more specifically named defendants in
2  such a manner as to justify disregarding the separateness of said entities or
3  individuals from one another. Some or all DOE defendants are entities or
4  individuals, who function as the agents or co-conspirators of specifically named
5  defendants, and other defendants, including  DOE defendants, facilitating the
6  ability of one another to perpetrate the wrongs alleged in herein. Plaintiff will seek
7  leave of Court to amend this Complaint to reflect the true names and capacities of
8  the Defendants designated as DOES when such identities and the true connection
9  of them to this case become known.

10

## JURISDICTION AND VENUE

11     20.   The Court has original jurisdiction over this complaint pursuant to 28
12  U.S.C. §1332(d) and the Class Action Fairness Act of 2005, Publ. L. 109-2 (Feb.
13  18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. § 1367.

14     21.   Venue is proper in this district under, *inter alia*, 28 U.S.C. §§1391
15  and/or Pub. L. 109-2.  Defendants made or caused the Products to be offered for
16  sale and sold to the public, in this district in California.

17

## CLASS ACTION ALLEGATIONS

18     22.   Plaintiff brings this action on her own behalf and as a Class action
19  pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the
20  following proposed class:

21

22
23

> All persons in the United States who purchased, or incurred damages
> by using, pet food produced or manufactured by Defendants that was
> or will be recalled by Defendants, including that produced from
> December 3, 2006 up to and including March 6, 2007.

24
25
26
27
28

Upon completion of discovery with respect to the scope of the Class, Plaintiff
reserves the right to amend the class definition.  Excluded from the Class are
Defendants, their parents, subsidiaries and affiliates, directors and officers, and
members of their immediate families.  Also excluded from the Class are the court,

- 5 -

1  the Court's spouse, all person within the third degree of relationship to the Court

2  and its spouse, and the spouses of all such persons.

3      23.    The Class is composed of thousands of persons throughout the

4  country, and is sufficiently numerous for class treatment.  The joinder of all Class

5  members individually in one action would be impracticable, and the disposition of

6  their claims in a class action will provide substantial benefits to the parties and the

7  Court.

8      24.    Plaintiff's claims are typical of the claims of the Class, and Plaintiffs

9  has no interests adverse to the interests of other members of the Class.

10     25.    This dispute raises questions of law and fact that are common to all

11 Class members.  Those common questions predominate over questions that arise

12 on an individual basis for Class members.  The common questions of law and fact

13 include, without limitation:

14         (a)    Whether   Defendants   violated   California   Business   &

15 Professions Code §17200, *et seq.* and §17500, *et seq.*;

16         (b)    Whether Defendants' representations, omissions, and conduct

17 regarding the Products were misleading or false;

18         (c)    Whether Defendants' representations and conduct were likely

19 to deceive consumers into believing that the Products were safe for the purpose for

20 which they were sold;

21         (d)    When Defendants knew or should have known the Products

22 were poisoning animals;

23         (e)    Whether Defendants refused to disclose the problems with the

24 Products after it knew of their propensity to harm pets;

25         (f)    Whether the propensity of the Products to harm pets constitutes

26 a manufacturing or design defect;

27

28

- 6 -

1         (g)    Whether Defendants' conduct constitutes a breach of

2  warranties;

3         (h)    Whether Defendants' conduct constitutes a breach of contract;

4         (i)    Whether members of the Class have been injured by

5  Defendants conduct;

6         (j)    Whether members of the Class have sustained damages and are

7  entitled to restitution as a result of Defendants wrongdoing and, if so, what is the

8  proper measure and appropriate formula to be applied in determining such

9  damages and restitution, the availability of emotional distress and medical

10  monitoring damages; and

11         (k)    Whether members of the Class are entitled to injunctive relief.

12     26.    Plaintiff will fairly and adequately protect the interests of the Class

13  and have retained counsel experienced and competent in the prosecution of class

14  action litigation.

15     27.    A class action is superior to other methods for the fair and efficient

16  adjudication of the claims herein asserted.  Plaintiffs anticipate that no unusual

17  difficulties are likely to be encountered in the management of this class action.

18     28.    A class action will permit a large number of similarly situated persons

19  to prosecute their common claims in a single forum simultaneously, efficiently,

20  and without the duplication of effort and expense that numerous individual actions

21  would engender.  Class treatment also will permit the adjudication of relatively

22  small claims by many Class members who could not otherwise afford to seek legal

23  redress for the wrongs complained of herein.  If a Class or general public action is

24  not permitted, many Class members will likely receive no remedy for damages

25  suffered as a result of Menu Food's misconduct.

26

27

28

- 7 -

1    29.    Defendants have acted and refused to act on grounds generally
2   applicable to the entire Class, thereby making appropriate final injunctive relief
3   with respect to the Class as a whole.

4                                    **FACTS**

5    30.    Defendants hold themselves out to the public as a manufacturer of
6   safe, nutritious, and high-quality dog and cat food. Indeed, it claims that it is "the
7   leading North American private-label/contract manufacturer of wet pet food
8   products sold by supermarket retailers, mass merchandisers, pet specialty retailers
9   and other retail and wholesale outlets." However, on March 23, the New York
10  State Agriculture Commissioner and Cornell University's College of Veterinary
11  Medicine announced that scientists at the New York State Food Laboratory
12  discovered aminopterin -- a substance fatal to dogs and cats (and commonly used
13  as rat poison in many countries) -- was present in samples of Defendants products.
14  The tests were conducted, because dogs and cats have been dying all over the
15  country after consuming Defendants' pet food.

16   31.    One week earlier, on March 16, 2007, Defendants announced a recall
17  of the Products, which included approximately 42 brands of "cuts and gravy" style
18  dog food and 51 brands of "cuts and gravy" style cat food, all produced at
19  Defendants' facilities in Emporia, Kansas and Pennsauken, New Jersey between
20  December 3, 2006 and March 6, 2007.

21   32.    Defendants knew -- or should have known -- about the Product long
22  before the public found out from the New York State Agriculture Commissioner
23  what was going on:    Indeed, well before Defendants' March 16, 2007 recall
24  announcement, Defendants received numerous complaints from around the country
25  concerning sick and dead dogs and cats that ate the Products. Indeed, Defendants
26  had determined the likely source of the source of the contamination in the Products
27  and ceased using that supplier at least 10 days earlier -- by March 6, 2007.

28
                                      - 8 -

1 Defendants knew about problems no later than February 20, 2007, and were
2 conducting an internal investigation by February 27, 2007. Defendants were
3 thereby able to determine a particular new supplier of wheat gluten as the likely
4 source of the poison, and correct that issue before announcing the recall, thereby
5 limiting the temporal scope of the recall. After March 6, 2007, Defendants
6 continued to maintain their silence, as they -- according to their own later
7 announcement -- conducted a "substantial battery of technical tests, conducted by
8 both internal and external specialists."

9       33.    Defendants still did not announce a recall or inform the public about
10 the Products until its largest institutional customer, which accounted for
11 approximately 11% of Menu Food's revenue, indicated that it would initiate its
12 *own* recall of Defendants' products, and place all of its future Menu Food orders
13 on "hold." Faced with having one of its customers announce a recall, Defendants
14 finally made its own announcement on March 16, 2007.

15      34.    Defendants' delay in disclosing vital information concerning the
16 Products is in direct contrast to its own published Code of Ethical Conduct
17 ("Code") which touts that it is "committed to full and honest communications with
18 [its] customers about [its] products and services." Defendants have further
19 acknowledged in its Code that, as a pet food company, its customers have "trust in
20 us" and that "their trust in us must be justified" (e.g., by avoiding "promises that
21 Menu [Foods] cannot keep").

22      35.    Defendants, directly, or through agents, ostensible agents and / or co-
23 conspirators, by selling the Products as pet food, have implicitly and explicitly
24 represented that the Products are fit for consumption by pets, and will not result in
25 the death and serious illness of the pets that consume the purported food.

26      36.    Defendants have also made representations, including on product
27 labeling and otherwise in print materials and in other marketing and promotional
28

-9-

1 materials, concerning the quality of the Products, including explicit and implicit
2 representations that the Products are suitable for consumption by pets. Defendants
3 ultimately make billions of dollars in revenue a year from companies who sell
4 Menu Foods at the retail level -- accordingly, Defendants keep themselves apprised
5 of the advertising, promotions, marketing and claims that are made on behalf of
6 Menu Food's products. On information and belief, Defendants coordinate with the
7 companies who brand the product at the retail level, concerning the claims made
8 about the quality of Defendants product, including the Products.

9       37.    Plaintiff Dawn Howe purchased the Products and fed them to her four
10 pet cats, never suspecting that it contained aminopterin. Aminopterin is a deadly
11 poison that is foreign to pet food, does not naturally occur within it, and would not
12 be expected by any reasonable person to be present in pet food. One of Howe's
13 cats died from kidney failure as a result of the aminopterin in the Product. Howe
14 took her remaining three to the vet for a panel of blood tests, only to learn that two
15 of her surviving cats have also been affected, although not terminally. Aside from
16 emotional trauma, Ms. Howe has also incurred out-of-pocket costs in connection
17 with the care of her cats, and will continue to do so, as a result of Defendants'
18 Product.

19                          **FIRST CAUSE ACTION**
                       **STRICT PRODUCTS LIABILITY**
20

21      38.    Plaintiff hereby incorporates all other allegations in the Complaint
22 into this Cause of Action, except such allegations as may be inconsistent herewith
23 (which are plead in the alternative). Plaintiff alleges this cause of action on behalf
24 of herself and all others similarly situated.

25      39.    Defendants are strictly liable for supplying a product that is either
26 defective in its manufacture by virtue of the introduction of aminopterin into the
27 Product while under Menu Food's control or, alternatively, defective in its design,

28

- 10 -

1   by virtue of the lack of safeguards necessary to ensure that aminopterin or similar
2   toxins are not introduced into its pet food while under Menu Food's control.

3       40.    Defendants are also strictly liable for failure to warn the public of the
4   known dangers and reasonably foreseeable harm that could result from use of the
5   Product.

6       41.    Plaintiff, as a pet owner, is a reasonably foreseeable user of the
7   Product, and purchased and used the product in a foreseeable manner, that is,
8   Plaintiff fed pets with the Product. Plaintiff has been damaged, and has suffered
9   losses including the loss of a pet, the expenditure of money for medical care and
10  monitoring of pets, severe emotional distress, and the money spent on the Product
11  itself.

12              **SECOND CAUSE OF ACTION**
                **NEGLIGENCE**
13

14      42.    Plaintiff hereby incorporates all other allegations in the Complaint
15  into this Cause of Action, except such allegations as may be inconsistent herewith
16  (which are plead in the alternative). Plaintiff alleges this cause of action on behalf
17  of herself and all others similarly situated.

18      43.    Defendants owed a duty to Plaintiff to ensure that its pet foods were
19  not poisonous to pets in the manner of the Products.

20      44.    Additionally, Defendants breached their duty of care to Plaintiff by
21  failing to use sufficient quality control, perform adequate testing, proper
22  manufacturing, production, or processing, and failing to take sufficient measure to
23  prevent the Products from being offered for sale, sold, or fed to pets.

24      45.    *Res ipsa loquitur* applies because Defendants had exclusive control of
25  the relevant instrumentalities, including the Product and manufacturing facilities,
26  and rat poison would not normally be present, absent negligence.

27

28
                                            - 11 -
    DOCS\398912v1

1    46.    Menu Food's breaches of duty were the actual and proximate cause of
2  damage to Plaintiff, including the loss of a pet, the expenditure of money for
3  medical care and monitoring of pets, severe emotional distress, and the money
4  spent on the Product itself.

5                         **THIRD CAUSE OF ACTION**
                            **BREACH OF WARRANTY**
6

7    47.    Plaintiff hereby incorporates all other allegations in the Complaint
8  into this Cause of Action, except such allegations as may be inconsistent herewith
9  (which are plead in the alternative). Plaintiff alleges this cause of action on behalf
10 of herself and all others similarly situated.

11    48.    Defendants, by calling its product "food" and making other similarly
12 enticing representations as set forth more fully, above, impliedly and / or expressly
13 warranted that the Products were ingestible and would not sicken and kill the dogs
14 and cats that ate them. Menu foods also warranted thereby, that its products were
15 fit for the particular purpose of nourishing pets without sickening and killing said
16 pets.

17    49.    Defendants breached these warranties by virtue of the facts set forth in
18 the body of the Complaint, and Plaintiff was damaged thereby, including the loss
19 of a pet, the expenditure of money for medical care and monitoring of pets, severe
20 emotional distress, and the money spent on the Product itself.

21                         **FOURTH CAUSE OF ACTION**
                            **BREACH OF CONTRACT**
22

23    50.    Plaintiff hereby incorporates all other allegations in the Complaint
24 into this Cause of Action, except such allegations as may be inconsistent herewith
25 (which are plead in the alternative). Plaintiff alleges this cause of action on behalf
26 of herself and all others similarly situated.

27

28
                                  - 12 -

DOCS\398912v1

1     51.   The facts as set forth above also constitute the formation and breach

2 of a contract between Plaintiff and Defendants.  Alternatively, Plaintiff was

3 necessarily the third party beneficiary of a contract between Defendants and

4 intermediaries from whom Plaintiff purchased the Products. Plaintiff was damaged

5 by Defendants' breaches, as previously set forth.

6

**FIFTH CAUSE OF ACTION**
**FALSE ADVERTISING (Business and Professions Code § 17500)**

7

8     52.   Plaintiff hereby incorporates all other allegations in the Complaint

9 into this Cause of Action, except such allegations as may be inconsistent herewith

10 (which are plead in the alternative).  Plaintiff alleges this cause of action on behalf

11 of herself and all others similarly situated.

12     53.   California Business & Professions Code §17500 prohibits various

13 deceptive practices in connection with the dissemination in any manner of

14 representations for the purpose of inducing, or which are likely to induce, directly

15 or indirectly, customers to purchase consumer products such as the Products here

16 at issue.

17     54.   Defendants acts, practices, misrepresentations and omissions as

18 alleged herein were intended to, and did, induce the consuming public to purchase

19 the Products, and violated and continue to violate Business & Professions Code

20 §17500, in that the Products did not conform to Defendants misrepresentations.

21     55.   As a result of the foregoing, Plaintiff's entitled to injunctive and

22 equitable relief, restitution, and an order requiring disgorgement of Menu Food's

23 ill gotten gains.

24

**SIXTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES (Business and Professions Code § 17200)**

25

26     56.   Plaintiff hereby incorporates all other allegations in the Complaint

27 into this Cause of Action, except such allegations as may be inconsistent herewith

28

- 13 -

1  (which are plead in the alternative).  Plaintiff alleges this cause of action on behalf
2  of herself and all others similarly situated.

3      57.    The acts as set forth above also constitute unfair and unlawful
4  business practices, and Plaintiff has suffered damage thereby, including out of
5  pocket loss and other pecuniary harm, as also set forth above.

6                              **PRAYER FOR RELIEF**

7      WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the
8  following relief:

9      A.    An order certifying the Class as defined above;
10     B.    An award of actual damages;
11     C.    Appropriate injunctive relief;
12     D.    Medical and other expenses;
13     E.    Reasonable attorneys' fees and costs; and
14     F.    Such further and other relief the Court deems appropriate.

15                              **JURY DEMAND**

16
17     Plaintiff requests trial by jury of all claims that can be so tried.

18  DATED:  March 28, 2007          MILBERG WEISS & BERSHAD LLP
19                                  JEFF S. WESTERMAN
                                    SABRINA S. KIM
20
21
22                                  _____
                                    SABRINA S. KIM
23
                                    One California Plaza
24                                  300 South Grand Ave., Suite 3900
                                    Los Angeles, CA 90071
25                                  Telephone: (213) 617-1200
                                    Facsimile:  (213) 617-1975
26                                  Email: jwesterman@milbergweiss.com
                                    skim@milbergweiss.com
27
                                    Attorneys for Plaintiff
28
                                    - 14 -

DOCS\398912v1

# EXHIBIT B

1  LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3  San Francisco, CA 94111
   Telephone: 415/288-4545
4  415/288-4534 (fax)
   shawnw@lerachlaw.com
5
   LERACH COUGHLIN STOIA GELLER
6  RUDMAN & ROBBINS LLP
   PAUL J. GELLER
7  pgeller@lerachlaw.com
   STUART A. DAVIDSON
8  sdavidson@lerachlaw.com
   JAMES L. DAVIDSON
9  jdavidson@lerachlaw.com          E-filing
   120 East Palmetto Park Road, Suite 500
10 Boca Raton, FL 33432
   Telephone: 561/750-3000
11 561/750-3364 (fax)                           MMC

12 Attorneys for Plaintiff and the Class

13                UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15                                   C 07 1809
   SHERRY INGLES, Individually and on Behalf   Case No.
16 of All Others Similarly Situated,
                                    )          CLASS ACTION COMPLAINT
17                Plaintiff,        )
                                    )
18     vs.                          )
                                    )
19 MENU FOODS, INC., MENU FOODS     )
   INCOME FUND, MENU FOODS MIDWEST )
20 CORPORATION, and MENU FOODS      )
   SOUTH DAKOTA INC.,               )
21                                  )
                Defendants.         )
22 ─────────────────────────────────)

23

24

25

26

27

28

1    Plaintiff Sherry Ingles, individually and on behalf of all others similarly situated, files this

2  Class Action Complaint against defendants Menu Foods, Inc., a New Jersey Corporation, Menu

3  Foods Income Fund, a foreign corporation, Menu Foods Midwest Corporation, a Delaware

4  corporation, and Menu Foods South Dakota Inc., a Delaware corporation, and alleges as follows:

5                                    **INTRODUCTION**

6    1.    This is a class action lawsuit brought on behalf of plaintiff and others similarly

7  situated who purchased pet food and pet food products produced, manufactured and/or distributed by

8  defendants that caused injury, illness, and/or death to their household pets.

9    2.    Defendants are the leading North American private label/contract manufacturer

10  of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers,

11  and other wholesale and retail outlets, including Wal-Mart Stores, Inc., Safeway Inc., Kroger

12
   Company, PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food
13
   products to or for Procter & Gamble Company.  Defendants produce hundreds of millions of
14
15  containers of pet food annually.

16    3.    Defendants designed, manufactured, marketed, advertised and warranted their pet

17  food products.  In conjunction with each sale, defendants marketed, advertised and warranted that

18  the products were fit for the ordinary purpose for which such goods were used – consumption by

19
   household pets – and were free from defects.  Defendants produce the pet food products intending that
20
21  consumers will purchase the pet food products, regardless of brand or label name, place of purchase,

22  or the location where pets actually consume them.  The pet food products were intended to be placed

23  in the stream of commerce and distributed and offered for sale and sold to plaintiff and purchasers in

24  California and the United States and fed to their pets.

25    4.    Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil

26  Procedure, on her own behalf and as a representative of a class of persons consisting of all persons in

27  the United States who purchased, or incurred damages by using pet food produced manufactured
28

1    and/or distributed by defendants that was or will be recalled by defendants, including that produced

2    from December 3, 2006 up to and including March 6, 2007 (the "Class"). The pet food products

3    referenced in this paragraph will hereinafter be referred to as the "Products."

4

5         5.     As a result of the defective Products, plaintiff and members of the Class have suffered

6    damages in that they have incurred substantial veterinary bills, death of pets, and purchased and/or

7    own pet food and pet food products that they would not otherwise have bought had they known such

8    products were defective.

9         6.     Defendants know and have admitted that certain of the Products produced by

10   defendants between December 3, 2006 and March 6, 2007 are defective and causing injury and death

11   to household pets, and on March 16, 2007, initiated a recall of some of the Products. Further, the

12   Food and Drug Administration has reported that as many as one in six animals died in tests of the

13   Products by defendants last month after defendants received complaints the products were poisoning

14

15   pets around the country. A spokeswoman for the New York State Department of Agriculture and

16   Markets has said that rodent poison was determined to have been mixed into the Products by

17   defendants.

18                  **II.**    **PARTIES**

19        7.     Plaintiff is a resident of Alameda County, California, who, in February 2007,

20   purchased Priority Beef Slices in Gravy, UPC Code #2113041452, "Jan 11 10." The Priority dog

21   food purchased by plaintiff is a part of the group of Products that was produced, manufactured

22

23   and/or distributed by defendants.

24        8.     Defendant Menu Foods, Inc. is a New Jersey corporation with its principal place of

25   business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken,

26   New Jersey 08110.

27

28

9.      Defendant Menu Foods, Inc. is ultimately owned or controlled by defendant Menu Foods Income Fund, an unincorporated company with its principal place of business in the Province of Ontario, Canada. Some of defendant Menu Foods, Inc.'s high managerial officers or agents with substantial authority are also high managerial officers or agents of defendant Menu Foods Income Fund.

10.     Defendant Menu Foods Midwest Corporation is a Delaware corporation, and upon information and belief, an affiliate or subsidiary of, and wholly owned and controlled by defendant Menu Foods Income Fund.

11.     Defendant Menu Foods South Dakota, Inc. is a Delaware corporation, and upon information and belief, an affiliate or subsidiary of, and wholly owned and controlled by defendant Menu Foods Income Fund.

12.     Plaintiff, individually and as representative of a Class of similarly situated persons as defined below, brings suit against the named defendants for offering for sale and selling to plaintiff and members of the Class the Products in a defective condition and thereby causing damages to plaintiff and members of the Class.

### III.   JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and subsection (d), and the Class Action Fairness Act of 2005, Pub. L. 109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. §1367.

14.     Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391 and/or Pub. L. 109-2 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Thousands of consumers – including members of the Class – purchased the Products in this judicial district from retailers that defendants, their agents, affiliates, or others controlled or were in privity with. In turn, retailers or others sold the Products to the general public,

1    including plaintiff, and members of the Class.  The Products were purchased for consumption by the

2    pets of plaintiff and the other members of the Class.  Defendants made or caused these products to be

3    offered for sale and sold to the public, including plaintiff.

### IV.    SUBSTANTIVE ALLEGATIONS

### Defendants and Their Defective Pet Food

15.    Defendants are in the business of manufacturing, producing, distributing, and/or

selling pet food under various brands or labels, and/or for third-party firms, including: America's

Choice, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba,

10    Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee,

11    Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet

12    Classics, Nutro Natural Choice, Paws, Pet Pride, Preferred Pets, President's Choice, Priority, Sav-a-

13    Lot, Schnucks, Science Diet Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield

14    Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Winn Dixie.  Defendants has

15    manufactured or produced pet food for private labels for approximately 17 of the 20 leading retailers

16

17    in the United States.

18    16.    Defendants' business includes manufacturing, producing, distributing, or selling dog

19    food under various brands or labels, and/or for third-party firms, including: America's Choice,

20    Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus

21    Market Basket, Eukanuba, Food Lion, Giant Companion, Great Choice, Hannaford, Hill Country

22    Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables,

23    Nutriplan, Nutro Max, Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride - Good &

24    Meaty, Preferred Pets, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-

25    Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Winn Dixie,

26

27    and Your Pet.

28

17.    Defendants produce millions of pouches or containers of pet food products each year, a substantial portion of which are sold or offered for sale in California. Upon information and belief, defendants have sold, either directly or indirectly, thousands of units of defective pet food and pet food products nationwide and in the State of California.

18.    Defendants manufactured, marketed, advertised, warranted and sold, either directly or through their authorized distribution channels, the Products that caused plaintiff's damages. Plaintiff and members of the Class have been or will be forced to pay for damages caused by the defect in defendants' Products.

### Factual Allegations Related to Plaintiff

19.    In January and February 2007, plaintiff purchased Priority Beef Slices in Gravy dog food from a national chain grocery store, Safeway, operating in Northern California.

20.    Plaintiff's dog was fed the dog food and became ill mid-February 2007, exhibiting numerous symptoms consistent with kidney failure.

21.    Plaintiff's dog was put to sleep on March 3, 2007.

22.    On or about March 16, 2007, defendants announced a recall of approximately 42 brands of "cuts and gravy style pet food," all produced by defendants "between December 3, 2006 and March 6, 2007." Defendants had initially received complaints from consumers as far back as February 20, 2007 indicating that certain of defendants' pet food was causing kidney failure and death in dogs and cats.

23.    Thereafter, plaintiff learned about the recall and the potential problems that could occur from feeding the Products to her pet. Prior to the recall, defendants never warned plaintiff or any other member of the Class that the Products would cause their pets to have health problems. As referenced above, defendants knew about the risks of injury or death at least one month prior to the time that plaintiff fed the Products to her dog.

24.    As a result of their purchases of the Products, as set forth above, plaintiff and other members of the Class have suffered and will suffer damages, including consequential and incidental damages, such as the loss and disability of their household pets, costs of purchasing the Products and replacing them with a safe product, including sales tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by defendants, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

## V.    CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following proposed class:

> All persons in the United States who purchased, or incurred damages by using, pet food produced, manufactured and/or distributed by defendants that was or will be recalled by defendants, including that produced from December 3, 2006 up to and including March 6, 2007.

Upon completion of discovery with respect to the scope of the Class, plaintiff reserves the right to amend the class definition. Excluded from the Class are defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the Court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.[1]

26.    Numerosity: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiffs believe and therefore aver that there are thousands of Class members throughout the United States.

---

[1]    *See* Canon 3.C(3)(a) of the Code of Conduct for United States Judges.

27. <u>Commonality</u>: There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members including, *inter alia*, the following:

(a)    Whether defendants sold the Products that were recalled or subject to a recall;

(b)    Whether defendants advertised, represented, or held themselves out as producing or manufacturing a pet food product that was safe for pets of the Class members;

(c)    Whether defendants expressly warranted these products;

(d)    Whether defendants purported to disclaim any express warranty;

(e)    Whether defendants purported to disclaim any implied warranty;

(f)    Whether any limitation on warranty fails to meet its essential purpose;

(g)    Whether defendants intended that the Products be purchased by plaintiff, Class members, or others;

(h)    Whether defendants intended or foresaw that plaintiff, Class members, or others would feed the Products to their pets;

(i)    Whether defendants recalled the Products;

(j)    Whether defendants was negligent in manufacturing or processing the Products;

(k)    Whether using the Products as intended – to feed their pets – resulted in loss, injury, damage, or damages to the Class;

(l)    Whether defendants' negligence proximately caused loss or injury to damages;

(m)    Whether Class members suffered direct losses or damages; and

(n)    Whether Class members suffered indirect losses or damages.

28. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other members of the Class in that all such claims arise out of defendants' conduct in manufacturing, producing and entering into the stream of commerce defective pet food and pet food products, defendants' conduct surrounding the recall of its product, and plaintiff's and Class members' purchase and use of defendants' products. Plaintiff and the other members of the Class seek identical remedies under

1  identical legal theories, and there is no antagonism or material factual variation between plaintiff's

2  claims and those of the Class.

3     29.    Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class.

4  Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of

5  the Class. Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and

6  plaintiff has retained competent counsel experienced in litigation of this nature.

7
8     30.    Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) because common questions

9  of law and fact (identified in ¶25 above) predominate over questions of law and fact affecting

10  individual members of the Class. Indeed, the predominant issue in this action is whether defendants'

11  Products are defective and have caused damages to plaintiff and the members of the Class. In

12  addition, the expense of litigating each Class member's claim individually would be so cost

13  prohibitive as to deny Class members a viable remedy. Certification under Fed. R. Civ. P. 23(b)(3)

14  is appropriate because a class action is superior to the other available methods for the fair and

15  efficient adjudication of this action, and plaintiff envisions no unusual difficulty in the management

16
17  of this action as a class action.

18     31.    The undersigned counsel for plaintiff and the Class request that the Court appoint

19  them to serve as class counsel first on an interim basis and then on a permanent basis. Undersigned

20  counsel will fairly and adequately represent the interests of the Class, have identified or investigated

21  the Class' potential claims, are experienced in handling class actions, other complex litigation, and

22
23  consumer claims of the type asserted in the action, know the applicable law, will commit sufficient

24  resources to represent the Class, and are best able to represent the Class.

25     32.    Plaintiff requests this Court to certify this Class in accordance with Fed. R. Civ. P. 23

26  and the Class Action Fairness Act of 2005.

27
28

CLASS ACTION COMPLAINT                                                                    - 8 -

# VI.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Implied Warranty

33.    Plaintiff hereby adopts and incorporates by reference ¶¶1-32 as if more fully set forth herein.

34.    Defendants manufactured, marketed, sold and distributed the Products.

35.    At the time that defendants marketed, sold, and distributed the Products, defendants knew of the purpose for which the Products were intended and impliedly warranted that the Products were of merchantable quality and safe and fit for such use.

36.    Plaintiff reasonably relied upon the skill, superior knowledge and judgment of defendants as to whether the Products were of merchantable quality and safe and fit for its intended use.

37.    Due to defendants' wrongful conduct as alleged herein, plaintiff could not have known about the risks and side effects associated with the Products until after ingestion by plaintiff's dog.

38.    Contrary to such implied warranty, the Products were not of merchantable quality and were not safe or fit for their intended use.

39.    As a direct and proximate result of defendants' breach of implied warranty, plaintiff suffered damages as alleged herein.

WHEREFORE, plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against defendants as follows:

A.    For an order certifying the Class under the appropriate provisions of Fed. R. Civ. P. 23, as well as any appropriate subclasses, and appointing plaintiff and her legal counsel to represent the Class;

B.    Awarding actual and consequential damages;

CLASS ACTION COMPLAINT

1      C.     Granting injunctive relief;

2      D.     For pre- and post-judgment interest to the Class, as allowed by law;

3      E.     For reasonable attorneys' fees and costs to counsel for the Class if and when

4 pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

5      F.     Granting such other and further relief as is just and proper.

**SECOND CAUSE OF ACTION**

**Breach of Express Warranty**

8      40.    Plaintiff hereby adopts and incorporates by reference ¶¶1-39 as if more fully set forth

9 herein.

10    41.    Defendants expressly warranted that the Products were safe for consumption by pets.

11    42.    The Products did not conform to these express representations because the Products

are not safe and cause serious side effects in pets, including death.

14    43.    As a direct and proximate result of the breach of said warranties, and as the direct and

15 legal result of the defective condition of the Products as manufactured and/or supplied by

16 defendants, and other wrongdoing of defendants described herein, plaintiff was caused to suffer

17 damages.

18     WHEREFORE, plaintiff, on behalf of herself and all others similarly situated, prays for relief

19 and judgment against defendants as follows:

20     A.     For an order certifying the Class under the appropriate provisions of Fed. R. Civ. P.

21 23, as well as any appropriate subclasses, and appointing plaintiff and her legal counsel to represent

22 the Class;

23     B.     Awarding actual and consequential damages;

24     C.     Granting injunctive relief;

25     D.     For pre- and post-judgment interest to the Class, as allowed by law;

26     E.     For reasonable attorneys' fees and costs to counsel for the Class if and when

27 pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

28

F.      Granting such other and further relief as is just and proper.

## THIRD CAUSE OF ACTION

### Negligence

44.     Plaintiff hereby adopts and incorporates by reference ¶¶1-43 as if more fully set forth herein.

45.     Defendants owed plaintiff a duty to only offer safe, non-contaminated products for consumption by household pets.

46.     Through their failure to exercise due care, defendants breached this duty by producing, processing, manufacturing, and offering for sale the Products in a defective condition that was unhealthy to plaintiff's pet.

47.     Additionally, defendants breached their duty of care to plaintiff by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measures to prevent the Products from being offered for sale, sold, or fed to pets.

48.     Defendants knew or, in the exercise of reasonable care should have known, that the Products presented an unacceptable risk to the pet of plaintiff, and would result in damage that was foreseeable and reasonably avoidable.

49.     As a direct and proximate result of defendants' above-referenced negligence, plaintiff and the Class have suffered loss and damages.

WHEREFORE, plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against defendants as follows:

A.      For an order certifying the Class under the appropriate provisions of Fed. R. Civ. P. 23, as well as any appropriate subclasses, and appointing plaintiff and her legal counsel to represent the Class;

B.      Awarding actual and consequential damages;

1    C.    Granting injunctive relief;

2    D.    For pre- and post-judgment interest to the Class, as allowed by law;

3    E.    For reasonable attorneys' fees and costs to counsel for the Class if and when

4    pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

5    F.    Granting such other and further relief as is just and proper.

6                        **FOURTH CAUSE OF ACTION**

7                          **Strict Product Liability**

8    50.    Plaintiff hereby adopts and incorporates by reference ¶¶1-49 as if more fully set forth

9    herein.

10    51.    Defendants are producers, manufacturers and/or distributors of the Products.

11    52.    The Products produced, manufactured and/or distributed by defendants were

12    defective in design or formulation in that, when the Products left the hands of defendants, the

13    foreseeable risks exceeded the benefits associated with the design or formulation.

14

15    53.    Defendants' Products were expected to and did reach plaintiff without substantial

16    change in condition.

17    54.    Alternatively, the Products manufactured and/or supplied by defendants were

18    defective in design or formulation, in that, when they left the hands of defendants, they were

19    unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more

20    dangerous than other pet food products without concomitant accurate information and warnings

21    accompanying the product for plaintiff to rely upon.

22

23    55.    The Products produced, manufactured and/or distributed by defendants were

24    defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting

25    regarding the results of same.

26    56.    The Products produced, manufactured and/or distributed by defendants were

27    defective due to inadequate post-marketing warning or instruction because, after defendants knew or

28

1  should have known of the risk of injury from the Products, defendants failed to immediately provide

2  adequate warnings to plaintiff and the public.

3       57.    As the direct and legal result of the defective condition of the Products as produced,

4  manufactured and/or distributed by defendants, and of the negligence, carelessness, other

5  wrongdoing and actions of defendants described herein, plaintiff suffered damages.

6

7       WHEREFORE, plaintiff, on behalf of herself and all others similarly situated, prays for relief

8  and judgment against defendants as follows:

9       A.    For an order certifying the Class under the appropriate provisions of Fed. R. Civ. P.

10  23, as well as any appropriate subclasses, and appointing plaintiff and her legal counsel to represent

11  the Class;

12      B.    Awarding actual and consequential damages;

13      C.    Granting injunctive relief;

14      D.    For pre- and post-judgment interest to the Class, as allowed by law;

15      E.    For reasonable attorneys' fees and costs to counsel for the Class if and when

16  pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

17      F.    Granting such other and further relief as is just and proper.

18                        **FIFTH CAUSE OF ACTION**

19                          **Unjust Enrichment**

20      58.    Plaintiff hereby adopts and incorporates by reference ¶¶1-57 as if more fully set forth

21  herein.

22      59.    As a direct, proximate, and foreseeable result of defendants' acts and otherwise

23  wrongful conduct, plaintiff suffered damages. Defendants profited and benefited form the sale of the

24  Products, even as the Products caused plaintiff to incur damages.

25

26      60.    Defendants have voluntarily accepted and retained these profits and benefits, derived

27  from consumers, including plaintiff, with full knowledge and awareness that, as a result of

28  defendants' unconscionable wrongdoing, consumers, including plaintiff, were not receiving products

CLASS ACTION COMPLAINT                                                    - 13 -

1   of the quality, nature, fitness, or value that had been represented by defendants or that reasonable

2   consumers expected.  Plaintiff purchased pet food that she expected would be safe and healthy for

3   her dog and instead has had to now endure the death of her beloved pet.

4       61.    By virtue of the conscious wrongdoing alleged in this Complaint, defendants have

5
    been unjustly enriched at the expense of plaintiff who is entitled to, and hereby seeks, the
6
7   disgorgement and restitution of defendants' wrongful profits, revenue, and benefits, to the extent,

8   and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just

9   and proper to remedy defendants' unjust enrichment.

10      62.    Plaintiff has no adequate remedy at law.

11      WHEREFORE, plaintiff, on behalf of herself and all others similarly situated, prays for relief

12  and judgment against defendants as follows:

13      A.    For an order certifying the Class under the appropriate provisions of Fed. R. Civ. P.

14  23, as well as any appropriate subclasses, and appointing plaintiff and her legal counsel to represent

15  the Class;

16      B.    Awarding reimbursement, restitution and disgorgement from defendants of the

17  benefits conferred by plaintiff and the Class;

18      C.    For pre- and post-judgment interest to the Class, as allowed by law;

19      D.    For reasonable attorneys' fees and costs to counsel for the Class if and when

20  pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

21      E.    Granting such other and further relief as is just and proper.

22

23

24

25

26

27

28

1

## JURY DEMAND

2          Plaintiff and the Class demand a jury trial on all issues triable by a jury.

3    DATED: March 30, 2007                     LERACH COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
4                                              SHAWN A. WILLIAMS

5

6                                              _____
                                                        SHAWN A. WILLIAMS
7

8                                              100 Pine Street, Suite 2600
                                               San Francisco, CA 94111
9                                              Telephone: 415/288-4545
                                               415/288-4534 (fax)
                                               shawnw@lerachlaw.com
10
                                               LERACH COUGHLIN STOIA GELLER
11                                             RUDMAN & ROBBINS LLP
                                               PAUL J. GELLER
12                                             pgeller@lerachlaw.com
                                               STUART A. DAVIDSON
13                                             sdavidson@lerachlaw.com
                                               JAMES L. DAVIDSON
14                                             jdavidson@lerachlaw.com
                                               120 E. Palmetto Park Road, Suite 500
15                                             Boca Raton, FL 33432-4809
                                               Telephone: 561/750-3000
16                                             561/750-3364 (fax)

17
                                               Attorneys for Plaintiff and the Class
18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                                                        - 15 -

1  CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2  Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3  named parties, there is no such interest to report.

4

5

6  _____

7  ATTORNEY OF RECORD FOR
   PLAINTIFF SHERRY INGLES

8  T:\casesSF\menu foods\CPT00040573.doc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 3 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

| | |
|---|---|
| RICHARD SCOTT AND BARBARA WIDEN, individually and All others Persons Similarly Situated, | )<br>)<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | )<br>) |
| MENU FOODS; MENU FOODS INCOME FUND; MENU FOODS GEN PAR LIMITED; MENU FOODS LIMITED PARTNERSHIP; MENU FOODS OPERATING PARTNERSHIP; MENU FOODS MIDWEST CORP; MENU FOODS SOUTH DAKOTA; MENU FOODS, INC.; MENU FOODS HOLDINGS, INC.; WAL-MART STORES, INC | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 0 7.5055

Defendants

### CLASS ACTION COMPLAINT

Plaintiffs Scott and Barbara Widen through their undersigned counsel, on behalf of themselves and all others similarly situated, upon both personal knowledge and information and belief, alleges as follows:

1.    This class action is brought against Defendants for negligently contaminating the pet food supply making the food unfit for animal consumption and harmful and for purposefully failing to warn consumers of the contaminated pet food. As a result of Defendant's actions, Plaintiff and other similarly situated pet owners have been damaged.

### PARTIES

2.    Plaintiffs Richard and Barbara Widen are a married couple and residents

of Benton County, Arkansas. Plaintiffs lost two cats due to the contaminated food produced,

distributed, marketed, and sold by the Defendants.

3.      Defendant, Menu Foods Income Fund (Menu Foods) is an unincorporated

company with its principal place of business in Ontario, Canada. It is doing business in the State

of Arkansas and has availed themselves of the protections of the State of Arkansas. Jurisdiction

is appropriate pursuant to the Arkansas Long Arm Statute, Ark. Code Ann. 16-4-101 and service

may be effected through the Hague convention on service abroad of judicial and extrajudicial

documents and civil or commercial matters at 8 Falconer Drive, Streetsville, ON, Canada L5N

1B1.

Menu Foods Midwest Corp. is a Delaware corporation and may be served through its

registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209

Orange Street, Wilmington DE. Defendant, Menu Foods Holding, Inc., is a Delaware

corporation and may be served through it registered agent for service, The Corporation Trust

Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware. Menu Foods

operates two manufacturing plants in the United States and distributes their pet food products

throughout the entire United States including Arkansas.

Defendant, Menu Foods, Inc. is a New Jersey corporation and may be served through its

registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton,

New Jersey. Upon information and belief, Defendants Menu Food Midwest Corp., Menu Foods

South Dakota Inc., Menu Foods, Inc., and Menu Foods Holdings, Inc., are wholly owned

subsidiaries of Menu Foods Income Fund, a business registered in and headquartered in Ontario,

Canada. The above listed Defendants are hereinafter referred to collectively as "Defendants" or

"Menu Foods"

4.    Defendant Wal-Mart Stores, Inc, (Wal-Mart) is a Delaware corporation headquartered in Bentonville, Arkansas that sells Menu Food products throughout their retail stores in Arkansas and throughout the United States. Wal-Mart is the single largest distributor of Menu Foods products. Plaintiffs purchased the contaminated pet food at the Wal-Mart store in Bentonville, AR. Menu Foods produced some brands of pet food exclusively for Wal-Mart under a private label agreement.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d)(2). The matter in controversy exceeds $5,000,000, is a class action and there are members of the proposed Class that are citizens of States different than at least one of the Defendants.

6.    Venue is proper in this district under 28 U.S.C. § 1391 (b) and (d). Defendant Wal-Mart is headquartered in the District. Defendant Menu Foods Income Fund is a foreign corporation headquartered outside the United States and distributes, through retailers such as Wal-Mart, the pet food products in issue in the District. Additionally, Plaintiffs purchased the tainted pet food in the District.

## FACTS

7.    Defendant, Menu Foods told the U. S. Food and Drug Administration, that they had become aware of the contamination on February 20, 2007. Menu Foods believed that the contamination came from their supplier of Wheat Gluten. Defendant, Menu Foods conducted test to determine if the contamination was harmful to pets on February 27, 2007. The results of the test resulted in death to one out of every six pets who consumed the contaminated pet food.

8.      Defendants Menu Foods and Wal-Mart did nothing to prevent the distribution of the contaminated pet food until weeks after the discovery occurred. This action, or lack thereof, permitted and caused additional harm to thousands of pet owners in Arkansas and throughout the country.

9.      Plaintiffs owned two cats that were very healthy middle aged cats. The two cats were named "Fred" and "Grinch." Plaintiffs fed the two cats "Special Kitty" cat food which was made by Menu Foods exclusively for Wal-Mart under a private label agreement.

10.     Beginning around February, 2007, Plaintiffs noticed that both cats were acting differently and had begun to lose weight. In a tragic irony, Plaintiff forced the cats to eat more of the contaminated pet food, unaware that the pet food was contaminated and the cause of the poor health.

11.     On March 18, 2007, Plaintiff was finally made aware through the media that a recall had been issued for the pet food by the Defendant, Menu Foods and that the pet food could cause kidney failure and other symptoms that were being experienced by the Plaintiffs' cats. On March 19, 2007, Plaintiffs took their cats to their veterinarian for examination. That same day, the veterinarian ran some tests and informed the Plaintiffs that both cats were suffering from kidney failure due to the consumption of the contaminated pet food. The veterinarian suggested that the only chance of survival for the cats was a very expensive procedure in which the likelihood of success was very small.

12.    The veterinarian diagnosed the kidney failure to be the result of the cats consumption of contaminated pet food. The veterinarian recommended that the Plaintiffs call a Menu Foods hotline number which she provided to the Plaintiffs. The hotline had been set up on or around March 17, 2007, nearly three weeks after Menu Foods had become aware of the problem. The veterinarian suggested that Menu Foods should pay for the expensive procedure.

13.    The Plaintiffs called the hotline number around a hundred times to determine if Menu Foods would pay for the procedure and never reached an operator or answering machine. Finally, out of desperation the Plaintiffs called another number for Menu Foods and left a message for somebody from Menu Foods to call them. The message was never returned.

14.    Around 3:30 p.m. on the afternoon of March 19, 2007, Plaintiffs made the decision that their cats could not suffer any further and euthanized the cats.

## CLASS ACTION ALLEGATIONS

15.    Plaintiffs brings all claims as class claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23 are met with respect to the Class defined below.

16.    Plaintiffs bring their claims on their own behalf, and on behalf of the following Class:

> All persons in the United States who purchased contaminated pet food from Wal-Mart that was produced by Menu Foods.

17.    The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class, upon information and belief, includes millions of members.

18.    Questions of law or fact common to the Class exist as to Plaintiff and all Class Members, and these common questions predominate over any questions affecting only individual members of the Class. Among the common questions of law or fact are the following:

     a.     Whether Defendants were negligent in allowing pet food products in the United States to be contaminated with a dangerous ingredient that was not safe for consumption.

     b.     Whether Defendants owed a duty to pet owners by ensuring that the pet food was not contaminated with dangerous ingredients;

     c.     Whether Defendants' conduct amounted to breach of such a duty;

     d.     Whether Defendants' conduct was a proximate cause of Plaintiff's and the Class Members' damages;

     e.     Whether Defendants are responsible for the contamination of the pet food;

     f.     Whether Defendants were negligent per se;

     g.     Whether Defendants are strictly liable;

     h.     Whether Defendants breached their warranty of merchantability.

     i.     Whether Defendants produced, marketed, distributed, and sold a defective product

     j.     Whether Defendants failed to adequately warn consumers of contaminated pet food.

     k.     Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

     l.     Whether Plaintiff and the Class Members are entitled to damages, and, if so, the proper amount of such damages; and

     m.     Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

### COUNT I

### Negligence

19.    Plaintiff incorporates by reference all of the allegations contained above.

20.    Defendants owed a duty to Plaintiff to ensure that the pet food was not

contaminated with dangerous and harmful ingredients.

21.     Defendants breached that duty by allowing the contamination of the pet food supply with a dangerous and harmful ingredient during the approximate time of time January 2007 to March, 2007.

22.     Defendants' actions proximately caused damage to Plaintiff and the Class.

23.     Plaintiff and the Class have suffered damages by a loss of property, cost of medical bills, and cost of purchasing new, uncontaminated pet food.

## COUNT II

### Negligence Per Se

24.     Plaintiff incorporates by reference all of the allegations contained above.

25.     Defendants' acts and/or omissions as described herein constitute negligence per se.

26.     Defendants had a duty to ensure that their pet food was produced, transported, marketed, distributed, and sold in a manner consistent with governmental regulations.

27.     Defendants breached this duty in violation of regulatory standards.

28.     Such breaches directly and proximately caused damages to the Plaintiff and the Class.

29.     Plaintiff and the Class have suffered damages due to Defendants failure to conform to the United States Food and Drug Administration regulations.

## COUNT III

### Strict Liability- Defective in Design or Manufacture

30.     Plaintiff incorporates by reference all of the allegations contained above.

31.    Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption and in violation of the Defendants Warranty of Merchantability owed to Plaintiff.

32.    As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

33.    Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

34.    Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

## COUNT IV

### Strict Product Liability - Failure to Warn

35.    Plaintiff incorporates by reference all of the allegations contained above.

36.    Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption.

37.    Defendant failed to warn Plaintiff or Class Members of the dangers on the Defendants' labels or through other means of advertising until after enormous damage had been suffered by the Plaintiffs and the Class Members.

38.    Even after Defendant became aware of the dangerous contamination of its pet food, they still refused to warn the consumers and allowed countless other consumers to purchase the contaminated pet food and suffer great harm.

39.   As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

40.   Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

41.   Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

## JURY TRIAL DEMANDED

42.   Plaintiff demands a jury of twelve.

## PRAYER

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, request that he and the other Class Members have judgment entered in their favor and against Defendants, as follows:

A.   An order certifying that this action, involving Plaintiff's and the Class Members' separate and distinct claims, be maintained as a nationwide class action under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and their undersigned counsel to represent the Class;

B.   An award, for Plaintiff's and each Class Members' separate and distinct claims, of compensatory damages and pre- and post-judgment interest thereon;

C.   An award for Plaintiff's and the Class Members of punitive damages for reckless and wanton conduct;

     D.     Injunctive relief to prevent further contamination of the American

pet food supply; and

     E.     All other appropriate and just relief.

DATED: March 23, 2007          **PATTON, ROBERTS, MCWILLIAMS**
                           **& CAPSHAW, L.L.P.**

                           Jeremy Y. Hutchinson

                           Jeremy Y. Hutchinson
                           Jack Thomas Patterson II
                           Stephens Building
                           111 Center St., Suite 1315
                           Little Rock, AR 72201
                           Phone: (501) 372-3480
                           Fax: (501) 372-3488

                           Richard Adams
                           James C. Wyly
                           Sean F. Rommel
                           **PATTON, ROBERTS, MCWILLIAMS**
                           **& CAPSHAW, L.L.P.**
                           Century Bank Plaza, Suite 400
                           P.O. Box 6128
                           Texarkana, Texas 75505-6128
                           Phone: (903) 334-7000
                           Fax: (903) 334-7007

                           **ATTORNEYS FOR PLAINTIFF**

# EXHIBIT D

‾‾‾‾ FILED ‾ ‾‾ ENTERED
‾‾‾‾ LODGED ‾ ‾‾ RECEIVED

MAR 27 2007   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

**07-CV-00455-CMP**

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUZANNE E. JOHNSON and CRAIG R. KLEMANN, individually and on behalf of all others similarly situated, | **CV7   455** No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| MENU FOODS, a foreign corporation, | |
| Defendant. | |

Plaintiffs Suzanne E. Johnson and Craig R. Klemann ("Plaintiffs"), by and through their undersigned attorneys, bring this civil action for damages on behalf of themselves and all others similarly situated against the above-named Defendant and complain and allege as follows:

## I.   NATURE OF ACTION

1.      Plaintiffs bring this action as a Class Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased any dog or cat food that was produced by defendant Menu Foods and/or has had a dog or cat become ill or die as a result of eating the food.

2.      The Defendant is a producer of, *inter alia*, dog and cat food. Menu Foods produces dog and cat food sold under familiar brand names such as Iams, Eukanuba and Science

CLASS ACTION COMPLAINT - 1
Case No.

**HB**

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 ■ SEATTLE, WA 98101
TELEPHONE (206) 623 7292 ■ FACSIMILE (206) 623-0594

001958 11 161455 V1

1  Diet. Menu Foods distributes its dog and cat food throughout the United States to retailers such
2  as Wal-Mart, Kroger and Safeway.

3      3.    Dog and cat food that the Defendant produced caused an unknown number of
4  dogs and cats to become ill, and many of them to die.

5      4.    To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat
6  food that have sickened and killed dogs and cats. All recalled food to date is of the "cuts and
7  gravy wet" style.

8      5.    As a result of the Defendant's actions, Plaintiffs and other Class members have
9  suffered economic damage.

10              II.    PARTIES

11      6.    Plaintiffs Suzanne E. Johnson and Craig R. Klemann have at all material times
12  been residents of Meridian, Idaho. Ms. Johnson and Mr. Klemann have a pet that became sick
13  after eating Defendant's pet food.

14      7.    Defendant Menu Foods is, upon information and belief, a corporation organized
15  under the laws of Canada that transacts business in Washington State.

16          III.    JURISDICTION AND VENUE

17      8.    Subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the
18  Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds
19  $75,000.00. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C.
20  § 1367.

21      9.    Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because the
22  Defendant systematically and continuously sold its product within this district and Defendant
23  transacts business within this district.

24          IV.    CLASS ACTION ALLEGATION

25      10.   Plaintiffs bring this suit as a class action under Rules 23(a), (b)(1), (b)(2) and
26  (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class (the

CLASS ACTION COMPLAINT - 2
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    "Class") composed of all persons who purchased any dog or cat food that was produced by the

2    Defendant and/or has had a dog or cat become ill or die as a result of eating the food. Plaintiffs

3    reserve the right to modify this class definition before moving for class certification.

4        11.    The Class is ascertainable and there is a well-defined community of interest

5    among the members of the Class.

6        12.    Membership in the Class is so numerous as to make it impractical to bring all

7    Class members before the Court. The identity and exact number of Class members is unknown

8    but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu

9    Foods has identified 50 dog foods and 40 cat foods that may be causing harm to pets.

10        13.    Plaintiffs' claims are typical of those of other Class members, all of whom have

11    suffered harm due to Defendant's uniform course of conduct.

12        14.    Plaintiffs are members of the Class.

13        15.    There are numerous and substantial questions of law and fact common to all of

14    the members of the Class that control this litigation and predominate over any questions affecting

15    only individual members of the Class. The common issues include, but are not limited to, the

16    following:

17        (a)    Was the Defendant's dog and cat food materially defective, and unfit for

18    use as dog or cat food?

19        (b)    Whether Defendant breached any contract, implied contract or warranties

20    related to the sale of the dog and cat food?

21        (c)    Did the Defendant's dog and cat food cause Plaintiffs' and other Class

22    members' pets to become ill?

23        (d)    Were Plaintiffs and other Class members damaged, and, if so, what is the

24    proper measure thereof?

25        (e)    The appropriate form of injunctive, declaratory and other relief.

26

CLASS ACTION COMPLAINT - 3
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

16.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for the Defendant – for example, one court might decide that the Defendant is obligated under the law to pay damages to Class members, and another might decide that the Defendant is not so obligated.  Individual actions may, as a practical matter, be dispositive of the interests of the Class.

17.     Plaintiffs will fairly and adequately protect the interests of the Class in that they have no interests that are antagonistic to other members of the Class and have retained counsel competent in the prosecution of class actions to represent themselves and the Class.

18.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs Defendant has committed against them.

19.     Without a class action, the Class will continue to suffer damage, Defendant's violations of the law or laws will continue without remedy, and Defendant will continue to enjoy the fruits and proceeds of its unlawful misconduct.

20.     This action will foster an orderly and expeditious administration of Class claims, economies of time, effort and expense, and uniformity of decision.

21.     Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendant's common liability, the Court can efficiently determine the claims of the individual Class members.

22.     This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendant.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958 21 161ass V1

23.    In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

24.    The Claims in this case are also properly certifiable under applicable law.

## V.    STATEMENT OF FACTS

25.    Plaintiffs Suzanne E. Johnson and Craig R. Klemann are owners of a male cat named Ollie.

26.    Ms. Johnson and Mr. Klemann purchased Special Kitty wet cat food from Wal-Mart and Pet Pride wet cat food from Fred Meyer for Ollie to consume.

27.    Ollie ate the Special Kitty and Pet Pride brand wet-style cat food for several years before becoming ill.

28.    Ollie became extremely ill after consuming Defendant's cat food and now suffers from kidney problems.

29.    In March 2007, Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food that had caused dogs and pets to become ill. One common symptom in the sick animals was kidney failure.

30.    The Special Kitty wet cat food from Wal-Mart and the Pet Pride wet cat food from Fred Meyer that Ollie consumed for several years before becoming ill are brands that Menu Foods recalled.

31.    As a result of Defendant's acts and omissions Plaintiffs and other Class members have suffered economic damage.

## VI.    BREACH OF CONTRACT

32.    Plaintiffs reallege all prior allegations as though fully stated herein.

33.    Plaintiffs and Class members purchased pet food produced by the Defendant based on the understanding that the food was safe for their pets to consume.

CLASS ACTION COMPLAINT - 5
Case No.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

001958-11  161455 V1

1    34.    The pet food produced by the Defendant was not safe for pets to consume and

2  caused dogs and cats to become ill. The unsafe nature of the pet food constituted a breach of

3  contract.

4    35.    As a result of the breach Plaintiffs and Class members suffered damages that may

5  fairly and reasonably be considered as arising naturally from the breach or may reasonably be

6  supposed to have been in the contemplation of the parties, at the time they made the contract, as

7  the probable result of the breach of it.

8                      **VII.   UNJUST ENRICHMENT**

9    36.    Plaintiffs reallege all prior allegations as though fully stated herein.

10    37.    Defendant was and continues to be unjustly enriched at the expense of Plaintiffs

11  and other Class members.

12    38.    Defendant should be required to disgorge this unjust enrichment.

13    **VIII.   UNLAWFUL, DECEPTIVE AND UNFAIR BUSINESS PRACTICES**

14    39.    Plaintiffs reallege all prior allegations as though fully stated herein.

15    40.    Defendant's sale of tainted pet food constitutes an unlawful, deceptive and unfair

16  business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et*

17  *seq.*, and similar statutory enactments of other states (including consumer protection and

18  consumer sales practice acts).

19    41.    Defendant's sale of hazardous pet food has the capacity to deceive a substantial

20  portion of the public and to affect the public interest.

21    42.    As a result of Defendant's unfair or deceptive acts or practices, Plaintiffs and

22  other Class members suffered injuries in an amount to be proven at trial.

23                      **IX.   BREACH OF WARRANTIES**

24    43.    Plaintiffs reallege all prior allegations as though fully stated herein.

25    44.    Cat food and dog food produced by Menu Foods are "goods" within the meaning

26  of Uniform Commercial Code Article 2.

CLASS ACTION COMPLAINT – 6
Case No.



001958-21 161466 V1

45.   Defendant's conduct as described herein constitutes breach of an implied or express warranty of affirmation.

46.   Defendant's conduct as described herein constitutes breach of an implied warranty of merchantability.

47.   Defendant's conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

48.   As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and other Class members have suffered damages in an amount to be proven at trial. Defendant had actual or constructive notice of such damages.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class members request that the Court enter an order of judgment against Defendant including the following:

Certification of the action as a class action under Rule 23(b)(1) - (3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representative and their counsel of record as Class Counsel;

Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with Defendant and its acts or omissions) and such other relief as provided by the statutes cited herein;

Prejudgment and post-judgment interest on such monetary relief;

Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

Other appropriate injunctive relief;

The costs of bringing this suit, including reasonable attorneys' fees; and

Such other relief as this Court may deem just, equitable and proper.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  181455 V1

1    DATED this 27th day of March, 2007.

2                               HAGENS BERMAN SOBOL SHAPIRO LLP

3

4                               By: _____
                                     Steve W. Berman, WSBA #12536
5                                    1301 Fifth Avenue, Suite 2900
                                     Seattle, Washington 98101
6                                    Telephone: (206) 623-7292
                                     E-mail: steve@hbsslaw.com
7
                                     Philip H. Gordon
8                                    Bruce S. Bistline
                                     Gordon Law Offices
9                                    623 West Hays St.
                                     Boise, ID 83702
10                                   Telephone: (208) 345-7100
                                     Facsimile: (206) 623-0594
11                                   E-mail: pgordon@gordonlawoffices.com

12
                                     *Attorneys for Plaintiffs*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 8
Case No.

001958-11 161455 V1

# EXHIBIT E

_____ FILED          _____ ENTERED
_____ LODGED         _____ RECEIVED

MAR 27 2007    DB

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
                                    DEPUTY

07-CV-00453-CMP

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STACEY HELLER, TOINETTE ROBINSON,
DAVID RAPP, and CECILY AND
TERRENCE MITCHELL, individually and on
behalf of all others similarly situated,

　　　　　　　　　　　　Plaintiff,

v.

MENU FOODS, a foreign corporation,

　　　　　　　　　　　　Defendant.

No. **CV 07 - 0453** JCC

CLASS ACTION COMPLAINT

　　　　Plaintiffs Stacey Heller, Toinette Robinson, David Rapp, and Cecily and Terrence Mitchell ("Plaintiffs"), by and through their undersigned attorneys, bring this civil action for damages on behalf of themselves and all others similarly situated against the above-named Defendant and complain and allege as follows:

## I. NATURE OF ACTION

　　　　1.　　Plaintiffs bring this action as a Class Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased any dog or cat food that was produced by defendant Menu Foods and/or has had a dog or cat become ill or die as a result of eating the food.

　　　　2.　　The Defendant is a producer of, *inter alia*, dog and cat food. Menu Foods produces dog and cat food sold under familiar brand names such as Iams, Eukanuba and Science

CLASS ACTION COMPLAINT - 1
Case No.

**HB**

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  Diet. Menu Foods distributes its dog and cat food throughout the United States to retailers such

2  as Wal-Mart, Kroger and Safeway.

3      3.      Dog and cat food that the Defendant produced caused an unknown number of

4  dogs and cats to become ill, and many of them to die.

5      4.      To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat

6  food that have sickened and killed dogs and cats. All recalled food to date is of the "cuts and

7  gravy wet" style.

8      5.      As a result of the Defendant's actions, Plaintiffs and other Class members have

9  suffered economic damage.

10              **II.      PARTIES**

11      6.      Plaintiff Stacey Heller has at all material times been a resident of Pulaski,

12  Virginia. Ms. Heller had a pet that became sick and died after eating Defendant's pet food.

13      7.      Plaintiff Toinette Robinson has at all material times been a resident of Truckee,

14  California. Ms. Robinson had a pet that became sick and died after eating Defendant's pet food.

15      8.      Plaintiff David Rapp has at all material times been a resident of Hannover

16  Township, Pennsylvania. Mr. Rapp had a pet that became sick and died after eating Defendant's

17  pet food.

18      9.      Plaintiffs Cecily and Terrence Mitchell have at all material times been a resident

19  of Seattle, Washington. The Mitchells had a pet that became sick and died after eating

20  Defendant's pet food.

21      10.     Defendant Menu Foods is, upon information and belief, a corporation organized

22  under the laws of Canada that transacts business in Washington State.

23              **III.     JURISDICTION AND VENUE**

24      11.     Subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the

25  Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds

26

CLASS ACTION COMPLAINT - 2
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    $75,000.00. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C.
2    § 1367.

3        12.    Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because the
4    Defendant systematically and continuously sold its product within this district and Defendant
5    transacts business within this district.

## IV.    CLASS ACTION ALLEGATION

7        13.    Plaintiffs bring this suit as a class action under Rules 23(a), (b)(1), (b)(2) and
8    (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class (the
9    "Class") composed of all persons who purchased any dog or cat food that was produced by the
10   Defendant and/or has had a dog or cat become ill or die as a result of eating the food.  Plaintiffs
11   reserve the right to modify this class definition before moving for class certification.

12       14.    The Class is ascertainable and there is a well-defined community of interest
13   among the members of the Class.

14       15.    Membership in the Class is so numerous as to make it impractical to bring all
15   Class members before the Court.  The identity and exact number of Class members is unknown
16   but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu
17   Foods has identified 50 dog foods and 40 cat foods that may be causing harm to pets.

18       16.    Plaintiffs' claims are typical of those of other Class members, all of whom have
19   suffered harm due to Defendant's uniform course of conduct.

20       17.    Plaintiffs are members of the Class.

21       18.    There are numerous and substantial questions of law and fact common to all of
22   the members of the Class that control this litigation and predominate over any questions affecting
23   only individual members of the Class.  The common issues include, but are not limited to, the
24   following:

25            (a)    Was the Defendant's dog and cat food materially defective, and unfit for
26   use as dog or cat food?

CLASS ACTION COMPLAINT - 3
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161395 V1

1        (b)    Whether Defendant breached any contract, implied contract or warranties

2    related to the sale of the dog and cat food?

3        (c)    Did the Defendant's dog and cat food cause Plaintiffs' and other Class

4    members' pets to become ill?

5        (d)    Were Plaintiffs and other Class members damaged, and, if so, what is the

6    proper measure thereof?

7        (e)    The appropriate form of injunctive, declaratory and other relief.

8        19.    The prosecution of separate actions by members of the Class would create a risk

9    of establishing incompatible standards of conduct for the Defendant – for example, one court

10   might decide that the Defendant is obligated under the law to pay damages to Class members,

11   and another might decide that the Defendant is not so obligated. Individual actions may, as a

12   practical matter, be dispositive of the interests of the Class.

13       20.    Plaintiffs will fairly and adequately protect the interests of the Class in that they

14   have no interests that are antagonistic to other members of the Class and have retained counsel

15   competent in the prosecution of class actions to represent themselves and the Class.

16       21.    A class action is superior to other available methods for the fair and efficient

17   adjudication of this controversy. Given (i) the substantive complexity of this litigation; (ii) the

18   size of individual Class members' claims; and (iii) the limited resources of the Class members,

19   few, if any, Class members could afford to seek legal redress individually for the wrongs

20   Defendant has committed against them.

21       22.    Without a class action, the Class will continue to suffer damage, Defendant's

22   violations of the law or laws will continue without remedy, and Defendant will continue to enjoy

23   the fruits and proceeds of its unlawful misconduct.

24       23.    This action will foster an orderly and expeditious administration of Class claims,

25   economies of time, effort and expense, and uniformity of decision.

26

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  161395 v1

1    24.    Inferences and presumptions of materiality and reliance are available to obtain

2    class-wide determinations of those elements within the Class claims, as are accepted

3    methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendant's

4    common liability, the Court can efficiently determine the claims of the individual Class

5    members.

6    25.    This action presents no difficulty that would impede the Court's management of it

7    as a class action, and a class action is the best (if not the only) available means by which

8    members of the Class can seek legal redress for the harm caused them by Defendant.

9    26.    In the absence of a class action, Defendant would be unjustly enriched because it

10    would be able to retain the benefits and fruits of its wrongful conduct.

11    27.    The Claims in this case are also properly certifiable under applicable law.

12    ## V.    STATEMENT OF FACTS

13    28.    Plaintiff Stacey Heller was the owner of a female cat named Callie.

14    29.    Ms. Heller purchased Special Kitty wet cat food from Wal-Mart for Callie to

15    consume.

16    30.    Callie ate the Special Kitty brand wet-style cat food for several years before her

17    death.

18    31.    Callie became extremely ill during the week of March 12, 2007. On March 14,

19    2007, Ms. Heller took Callie to a veterinarian, who informed her that Callie had suffered kidney

20    failure, also known as acute renal failure. On March 19, 2007, Callie had to be euthanized.

21    32.    Plaintiff Toinette Robinson was the owner of a female dog named Lhotse.

22    33.    Ms. Robinson purchased Priority U.S. brand wet dog food from Safeway for

23    Lhotse to consume.

24    34.    Lhotse ate the Priority U.S. brand wet dog food before her death.

25

26

CLASS ACTION COMPLAINT - 5
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

001958-11 161395 V1

1    35.    Lhotse became extremely ill during the end of January 2007. On February 1,

2    2007, Ms. Robinson took Lhotse to a veterinarian, who informed her that Lhotse had suffered

3    kidney failure. On February 15, 2007, Lhotse had to be euthanized.

4    36.    Plaintiff David Rapp was the owner of a male dog named Buck.

5    37.    Mr. Rapp purchased Weiss Total Pet wet-style dog food for Buck to consume.

6    38.    Buck became extremely ill in early February 2007. On February 10, 2007, Mr.

7    Rapp took Buck to a veterinarian, who informed him that Buck had suffered kidney failure.

8    Buck died soon afterwards.

9    39.    Plaintiffs Cecily and Terrence Mitchell were the owners of a male cat named

10   Yoda.

11   40.    The Mitchells purchased Iams wet cat food from QFC for Yoda to consume.

12   41.    Yoda became extremely ill and died after eating Iams wet pouches.

13   42.    In March 2007, Menu Foods recalled 50 brands of cuts and gravy wet-style dog

14   food and 40 brands of cuts and gravy wet-style cat food that had caused dogs and pets to become

15   ill. One common symptom in the sick animals was kidney failure.

16   43.    The Special Kitty wet cat food from Wal-Mart that Callie consumed for several

17   years before her death is one of the brands that Menu Foods recalled.

18   44.    The Priority U.S. brand wet dog food from Safeway that Lhotse consumed before

19   her death is also one of the brands that Menu Foods recalled.

20   45.    The Weiss Total Pet wet-style dog food that Buck consumed before his death is

21   another of the brands that Menu Foods recalled.

22   46.    The Iams wet cat food from QFC that Yoda consumed years before his death is

23   also one of the brands that Menu Foods recalled.

24   47.    As a result of Defendant's acts and omissions Plaintiffs and other Class members

25   have suffered economic damage.

26

CLASS ACTION COMPLAINT - 6
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161395 V1

## VI.    BREACH OF CONTRACT

48.    Plaintiffs reallege all prior allegations as though fully stated herein.

49.    Plaintiffs and Class members purchased pet food produced by the Defendant based on the understanding that the food was safe for their pets to consume.

50.    The pet food produced by the Defendant was not safe for pets to consume and caused dogs and cats to become ill. The unsafe nature of the pet food constituted a breach of contract.

51.    As a result of the breach Plaintiffs and Class members suffered damages that may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

## VII.    UNJUST ENRICHMENT

52.    Plaintiffs reallege all prior allegations as though fully stated herein.

53.    Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and other Class members.

54.    Defendant should be required to disgorge this unjust enrichment.

## VIII.    UNLAWFUL, DECEPTIVE AND UNFAIR BUSINESS PRACTICES

55.    Plaintiffs reallege all prior allegations as though fully stated herein.

56.    Defendant's sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

57.    Defendant's sale of hazardous pet food has the capacity to deceive a substantial portion of the public and to affect the public interest.

58.    As a result of Defendant's unfair or deceptive acts or practices, Plaintiffs and other Class members suffered injuries in an amount to be proven at trial.

CLASS ACTION COMPLAINT - 7
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

001958-11  161395 V1

## IX.   BREACH OF WARRANTIES

59.   Plaintiffs reallege all prior allegations as though fully stated herein.

60.   Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

61.   Defendant's conduct as described herein constitutes breach of an implied or express warranty of affirmation.

62.   Defendant's conduct as described herein constitutes breach of an implied warranty of merchantability.

63.   Defendant's conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

64.   As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and other Class members have suffered damages in an amount to be proven at trial. Defendant had actual or constructive notice of such damages.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class members request that the Court enter an order of judgment against Defendant including the following:

Certification of the action as a class action under Rule 23(b)(1) - (3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representative and their counsel of record as Class Counsel;

Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with Defendant and its acts or omissions) and such other relief as provided by the statutes cited herein;

Prejudgment and post-judgment interest on such monetary relief;



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623-0594

1    Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal

2   profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct alleged

3   herein;

4        Other appropriate injunctive relief;

5        The costs of bringing this suit, including reasonable attorneys' fees; and

6        Such other relief as this Court may deem just, equitable and proper.

7        DATED this 27th day of March, 2007.

8                            HAGENS BERMAN SOBOL SHAPIRO LLP

9

10                           By: /s/ Steve W. Berman
                             Steve W. Berman, WSBA #12536
11                           1301 Fifth Avenue, Suite 2900
                             Seattle, Washington 98101
12                           Telephone: (206) 623-7292
                             Facsimile: (206) 623-0594
13                           E-mail: steve@hbsslaw.com

14

15                           MYERS & COMPANY, P.L.L.C.
                             Michael David Myers
16                           1809 Seventh Avenue, Suite 700
                             Seattle, Washington 98101
17                           Telephone: (206) 398-1188
                             Facsimile: (206) 400-1112
18                           E-mail: mmyers@myers-company.com

19                           *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 9
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001058-11 161396 V1

# EXHIBIT F

FILED — LODGED
ENTERED — RECEIVED

MAR 27 2007    LK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

07-CV-00454-CMP

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AUDREY KORNELIUS and BARBARA SMITH, individually and on behalf of all others similarly situated, | **C 07-0454** MJP |
| Plaintiff, | No. |
| v. | CLASS ACTION COMPLAINT |
| MENU FOODS, a foreign corporation, | |
| Defendant. | |

Plaintiffs Audrey Kornelius and Barbara Smith ("Plaintiffs"), by and through their undersigned attorneys, bring this civil action for damages on behalf of themselves and all others similarly situated against the above-named Defendant and complain and allege as follows:

## I.    NATURE OF ACTION

1.    Plaintiffs bring this action as a Class Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased any dog or cat food that was produced by defendant Menu Foods and/or has had a dog or cat become ill or die as a result of eating the food.

2.    The Defendant is a producer of, *inter alia*, dog and cat food. Menu Foods produces dog and cat food sold under familiar brand names such as Iams, Eukanuba and Science

CLASS ACTION COMPLAINT - 1
Case No.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001538-11 161466 V1

1  Diet. Menu Foods distributes its dog and cat food throughout the United States to retailers such

2  as Wal-Mart, Kroger and Safeway.

3      3.      Dog and cat food that the Defendant produced caused an unknown number of

4  dogs and cats to become ill, and many of them to die.

5      4.      To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat

6  food that have sickened and killed dogs and cats. All recalled food to date is of the "cuts and

7  gravy wet" style.

8      5.      As a result of the Defendant's actions, Plaintiffs and other Class members have

9  suffered economic damage.

10                  **II.    PARTIES**

11      6.      Plaintiff Audrey Kornelius has at all material times been a resident of Ferndale,

12  Washington. Ms. Kornelius has a pet that became sick after eating Defendant's pet food.

13      7.      Plaintiff Barbara Smith has at all material times been a resident of Bremerton,

14  Washington. Ms. Smith has a pet that became sick after eating Defendant's pet food.

15      8.      Defendant Menu Foods is, upon information and belief, a corporation organized

16  under the laws of Canada that transacts business in Washington State.

17                  **III.   JURISDICTION AND VENUE**

18      9.      Subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the

19  Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds

20  $75,000.00. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C.

21  § 1367.

22      10.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because the

23  Defendant systematically and continuously sold its product within this district and Defendant

24  transacts business within this district.

25

26

CLASS ACTION COMPLAINT - 2
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001953-11 161954 V1

## IV.    CLASS ACTION ALLEGATION

11.     Plaintiffs bring this suit as a class action under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class (the "Class") composed of all persons who purchased any dog or cat food that was produced by the Defendant and/or has had a dog or cat become ill or die as a result of eating the food. Plaintiffs reserve the right to modify this class definition before moving for class certification.

12.     The Class is ascertainable and there is a well-defined community of interest among the members of the Class.

13.     Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu Foods has identified 50 dog foods and 40 cat foods that may be causing harm to pets.

14.     Plaintiffs' claims are typical of those of other Class members, all of whom have suffered harm due to Defendant's uniform course of conduct.

15.     Plaintiffs are members of the Class.

16.     There are numerous and substantial questions of law and fact common to all of the members of the Class that control this litigation and predominate over any questions affecting only individual members of the Class. The common issues include, but are not limited to, the following:

(a)     Was the Defendant's dog and cat food materially defective, and unfit for use as dog or cat food?

(b)     Whether Defendant breached any contract, implied contract or warranties related to the sale of the dog and cat food?

(c)     Did the Defendant's dog and cat food cause Plaintiffs' and other Class members' pets to become ill?



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 5?th Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161466 V3

(d)    Were Plaintiffs and other Class members damaged, and, if so, what is the proper measure thereof?

(e)    The appropriate form of injunctive, declaratory and other relief.

17.    The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for the Defendant – for example, one court might decide that the Defendant is obligated under the law to pay damages to Class members, and another might decide that the Defendant is not so obligated. Individual actions may, as a practical matter, be dispositive of the interests of the Class.

18.    Plaintiffs will fairly and adequately protect the interests of the Class in that they have no interests that are antagonistic to other members of the Class and have retained counsel competent in the prosecution of class actions to represent themselves and the Class.

19.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs Defendant has committed against them.

20.    Without a class action, the Class will continue to suffer damage, Defendant's violations of the law or laws will continue without remedy, and Defendant will continue to enjoy the fruits and proceeds of its unlawful misconduct.

21.    This action will foster an orderly and expeditious administration of Class claims, economies of time, effort and expense, and uniformity of decision.

22.    Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendant's common liability, the Court can efficiently determine the claims of the individual Class members.

CLASS ACTION COMPLAINT - 4
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161466 V1

23.    This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendant.

24.    In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

25.    The Claims in this case are also properly certifiable under applicable law.

## V.    STATEMENT OF FACTS

26.    Plaintiff Audrey Kornelius is the owner of a puppy named Shiwa.

27.    Ms. Kornelius purchased Nutro Natural Choice Puppy for Shiwa to consume.

28.    Shewa became extremely ill after consuming Defendant's dog food.

29.    Plaintiff Barbara Smith is the owner of a cat named Neko.

30.    Ms. Smith purchased Priority U.S. brand cat food from Safeway for Neko to consume.

31.    Neko became extremely ill after consuming Defendant's cat food. Ms. Smith's veterinarian has informed her that Neko will need monitoring for life.

32.    In March 2007, Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food that had caused dogs and pets to become ill. One common symptom in the sick animals was kidney failure.

33.    The Nutro Natural Choice Puppy food that Shiwa consumed is one of the brands that Menu Foods recalled.

34.    The Priority U.S. brand cat food from Safeway that Neko consumed is also one of the brands that Menu Foods recalled.

35.    As a result of Defendant's acts and omissions Plaintiffs and other Class members have suffered economic damage.

## VI.    BREACH OF CONTRACT

36.    Plaintiffs reallege all prior allegations as though fully stated herein.

CLASS ACTION COMPLAINT - 5
Case No.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161466 V1

37.    Plaintiffs and Class members purchased pet food produced by the Defendant based on the understanding that the food was safe for their pets to consume.

38.    The pet food produced by the Defendant was not safe for pets to consume and caused dogs and cats to become ill. The unsafe nature of the pet food constituted a breach of contract.

39.    As a result of the breach Plaintiffs and Class members suffered damages that may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

VII.    UNJUST ENRICHMENT

40.    Plaintiffs reallege all prior allegations as though fully stated herein.

41.    Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and other Class members.

42.    Defendant should be required to disgorge this unjust enrichment.

**VIII.    UNLAWFUL, DECEPTIVE AND UNFAIR BUSINESS PRACTICES**

43.    Plaintiffs reallege all prior allegations as though fully stated herein.

44.    Defendant's sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

45.    Defendant's sale of hazardous pet food has the capacity to deceive a substantial portion of the public and to affect the public interest.

46.    As a result of Defendant's unfair or deceptive acts or practices, Plaintiffs and other Class members suffered injuries in an amount to be proven at trial.

IX.    BREACH OF WARRANTIES

47.    Plaintiffs reallege all prior allegations as though fully stated herein.

CLASS ACTION COMPLAINT - 6
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161466 V1

1     48.    Cat food and dog food produced by Menu Foods are "goods" within the meaning

2 of Uniform Commercial Code Article 2.

3     49.    Defendant's conduct as described herein constitutes breach of an implied or

4 express warranty of affirmation.

5     50.    Defendant's conduct as described herein constitutes breach of an implied

6 warranty of merchantability.

7     51.    Defendant's conduct as described herein constitutes breach of an implied

8 warranty of fitness for a particular purpose.

9     52.    As a proximate result of the aforementioned wrongful conduct and breach,

10 Plaintiffs and other Class members have suffered damages in an amount to be proven at trial.

11 Defendant had actual or constructive notice of such damages.

## X.    PRAYER FOR RELIEF

13    WHEREFORE, Plaintiffs and Class members request that the Court enter an order of

14 judgment against Defendant including the following:

15    Certification of the action as a class action under Rule 23(b)(1) - (3) of the Federal Rules

16 of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class

17 Representative and their counsel of record as Class Counsel;

18    Actual damages (including all general, special, incidental, and consequential damages),

19 statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the

20 states having a legally sufficient connection with Defendant and its acts or omissions) and such

21 other relief as provided by the statutes cited herein;

22    Prejudgment and post-judgment interest on such monetary relief;

23    Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal

24 profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct alleged

25 herein;

26    Other appropriate injunctive relief;



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    The costs of bringing this suit, including reasonable attorneys' fees; and

2    Such other relief as this Court may deem just, equitable and proper.

3    DATED this 27th day of March, 2007.

4                                              HAGENS BERMAN SOBOL SHAPIRO LLP

5

6                                              By: /s/ Steve W. Berman 
                                               Steve W. Berman, WSBA #12536
7                                              1301 Fifth Avenue, Suite 2900
                                               Seattle, Washington 98101
8                                              Telephone: (206) 623-7292
                                               Facsimile: (206) 623-0594
9                                              E-mail: steve@hbsslaw.com

10

11                                             MYERS & COMPANY, P.L.L.C.
                                               Michael David Myers
12                                             WSBA No. 22486
                                               Myers & Company, P.L.L.C.
13                                             1809 Seventh Avenue, Suite 700
                                               Seattle, Washington 98101
14                                             Telephone: (206) 398-1188
                                               Facsimile: (206) 400-1112
15                                             E-mail: mmyers@myers-company.com

16                                             *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

# EXHIBIT G

```
_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAR 27 2007   DJ

        AT SEATTLE
   CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                        DEPUTY
```

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

MICHELE SUGGETT and DON JAMES, individually and on behalf of all similarly situated;

Plaintiffs,

vs.

MENU FOODS, a foreign corporation; THE IAMS COMPANY, a foreign corporation; EUKANUBA, a foreign corporation; DOG FOOD PRODUCERS NUMBERS 1-100 and CAT FOOD PRODUCERS 1-100; and DOES 1-100;

Defendants.

Case No.: **CV7   457** RSM

**CLASS ACTION COMPLAINT**

07-CV-00457-CMP

## I.  NATURE OF ACTION

1. Plaintiffs bring this action as a Class Action pursuant to FRCP 23 on behalf of all persons who purchased any dog or cat food produced by any of the above-named defendants and/or had a dog or cat become ill or die as a result of eating same.

2. The defendants are producers and distributors of, inter alia, dog and cat food. Menu Foods produces dog and cat food under familiar brand names such as Iams, Eukanuba and Science Diet. Menu Foods distributes its dog and cat food throughout the United

CLASS ACTION COMPLAINT - 1

ANIMAL LAW OFFICES OF
**ADAM P. KARP, ESQ.**
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

States to retailers such as Wal-Mart, Kroger and Safeway.

3. Dog and cat food which the defendants produced has caused an unknown number of dogs and cats to become ill and die.

4. To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat food which are causing dogs and cats to become ill. All recalled food to date is of the "cuts and gravy wet" style.

5. As a result of the Defendants' actions, Plaintiffs and other Class members have suffered noneconomic and economic damage.

## II. JURISDICTION, PARTIES, AND VENUE

6. This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) based on diversity and an amount of controversy in excess of $75,000. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the Defendants systematically and continuously sold their product within this district, and Defendants transact business within this district.

8. Eleven-year-old, female canine named Shasta ("Shasta") was regarded by Plaintiffs as their ward, sentient personalty, and member of their family.

9. Plaintiffs MICHELE SUGGETT and DON JAMES ("Plaintiffs") are, and at all times herein were, residents of this judicial district and the owners/guardians of Shasta.

10. Defendant Menu Foods is, upon information and belief, a corporation organized under the laws of Canada that transacts business in Washington State and Oregon State.

11. Defendant The Iams Company, is upon information and belief, a foreign corporation that transacts business in Washington State and Oregon State.

12. Defendant Eukanuba, is upon information and belief, a foreign corporation that transacts business in Washington State and Oregon State.

13. There are numerous other persons or entities, DOG FOOD PRODUCERS, CAT FOOD PRODUCERS, AND DOES 1-100, identities presently unknown to Plaintiffs who are, and were at all times mentioned herein, acting in concert or are jointly and severally liable with the above named Defendants. Each of the DOE Defendants sued herein under a fictitious name is responsible in some manner for the events and occurrences referred to herein. When the true names, capacities and involvement of said Defendants are ascertained, Plaintiffs will seek leave to amend the complaint accordingly.

CLASS ACTION COMPLAINT - 2

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

### III. CLASS ACTION ALLEGATION

14. Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class (the "Class") composed of all persons who purchased any dog or cat food which was produced by the defendants and/or has had a dog or cat become ill or die as a result of eating the food. Plaintiffs reserve the right to modify this class definition prior to moving for class certification.

15. This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

    a.     The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

    b.     Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu Foods has identified 50 dog foods and 40 cat foods which may be causing harm to companion animals.

    c.     Plaintiffs' claims are typical of those of other Class members, all of whom have suffered harm due to Defendants' uniform course of conduct.

    d.     Plaintiffs are members of the Class.

    e.     There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). The common issues include, but are not limited to, the following:

        i.     Did the defendants make representations regarding the safety of the dog and cat food they produced and sold?

        ii.     Were the defendants' representations regarding the safety of the dog and cat food false?

        iii.     Did the defendants' dog and cat food cause or allow Plaintiffs and other Class members' companion animals to become ill or die?

        iv.     Did the defendants produce a hazardous product for nonhuman animal consumption? If so, did this occur as a result of negligent, grossly negligent, reckless, or intentional conduct?

CLASS ACTION COMPLAINT · 3

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

v.    Were Plaintiffs and other Class members damaged?

f.    These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

g.    Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs have no interests that are antagonistic to other members of the Class and has retained counsel competent in the prosecution of class actions to represent themselves and the Class;

h.    Without a class action, the Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

i.    Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

j.    This action will foster an orderly and expeditious administration of Class claims, economies of time, effort and expense, and uniformity of decision;

k.    Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants' common liability, the Court can efficiently determine the claims of the individual Class members;

l.    This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendants.

m.    In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

16. The Claims in this case are also properly certifiable under applicable law.

## IV. GENERAL ALLEGATIONS

17. Plaintiffs were the owners and guardians of Shasta, a female Pomeranian.

18. Plaintiffs purchased contaminated Eukanuba Adult Bites in Gravy (lamb & rice, beef & gravy, savory chicken) ("contaminated food") on or about February 16, 2007 from Petsmart.

CLASS ACTION COMPLAINT - 4

ANIMAL LAW OFFICES OF
**ADAM P. KARP, ESQ.**
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

19. Plaintiffs started feeding the contaminated food to Shasta on or about March 15, 2007.

20. After eating the contaminated food, Shasta became extremely ill, causing the Plaintiffs to take her to a veterinarian on or about March 19, 2007. The veterinarian informed them that Shasta suffered devastatingly acute renal failure. On or about March 20, 2007, Shasta arrested and died.

21. Plaintiffs witnessed Shasta's deceased body shortly after she died and before a substantial change in her condition and location.

22. In March 2007 Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food which had caused dogs and cats to become ill. One common symptom in the sick animals was kidney failure, also known as acute renal failure.

23. The contaminated food that Shasta consumed is one of the brands that Menu Foods recalled.

24. The Plaintiffs lost Shasta's intrinsic value, as based on her unique qualities, characteristics, training, and bond, as well as the loss of her utility, companionship, love, affection, and solace. At the time of her death, Shasta had no fair market value and could not be replaced or reproduced. Rather, she had an intrinsic value.

25. The Plaintiffs owned and formed a relationship with Shasta for 11 years. She was a close family companion throughout that period and had special value, aiding Plaintiffs in their enjoyment of life, well-being, growth, development, and daily activities.

26. As a result of Defendants' actions causing Shasta's death, the Plaintiffs have suffered loss of enjoyment of life, interference with use and quiet enjoyment of their realty and personalty, and general damages pertaining to loss of use.

27. As a result of Defendants' acts and omissions the Plaintiffs and other Class members have suffered emotional and economic damage, including but not limited to mental anguish, loss or reduction of enjoyment of life, interference with use and quiet enjoyment of realty and/or personalty, wage loss, current and future veterinary and health-related bills, depreciation in or extinguishment of intrinsic, special, unique, or peculiar value, loss of use and/or companionship, actual, incidental, and consequential damages.

## FIRST CLAIM FOR RELIEF – UNJUST ENRICHMENT

28. Defendants were and continue to be unjustly enriched at the expense of the Plaintiffs and other Class members.

CLASS ACTION COMPLAINT - 5

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

29. Defendants should be required to disgorge this unjust enrichment.

## SECOND CLAIM FOR RELIEF – UNLAWFUL, DECEPTIVE, UNFAIR BUSINESS PRACTICES

30. Defendants' sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

31. Defendants' sale of hazardous dog and cat food has the capacity to deceive a substantial portion of the public and to affect the public interest.

32. As a result of Defendants' unfair or deceptive acts or practices, Plaintiffs and other class members suffered injuries in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF – BREACH OF WARRANTY

33. Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

34. Defendants' conduct as described herein constitutes breach of an implied or express warranty of affirmation.

35. Defendants' conduct as described herein constitutes breach of an implied warranty of merchantability.

36. Defendants' conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

37. As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and other class members have suffered damages in an amount to be proven at trial. Defendants had actual or constructive notice of such damages.

## FOURTH CLAIM FOR RELIEF – DECLARATORY RELIEF

38. This court has the authority to render a declaratory judgment pertaining to Plaintiffs and Class Members' rights, status and other legal relations.

39. Plaintiffs and Class Members are entitled to a declaratory judgment that, as a matter of law, their companion animals had no fair market value, no replacement value, but, rather, an intrinsic, peculiar, unique, or special value premised on their non-fungible and irreplaceable nature.

## FIFTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION

CLASS ACTION COMPLAINT - 6

ANIMAL LAW OFFICES OF
**ADAM P. KARP, ESQ.**
114 W. Magnolia St., Ste. 425 ▪ Bellingham, WA 98225
(360) 738-7273 ▪ Facsimile: (360) 392-3936
adam@animal-lawyer.com

40. Defendants owed Plaintiffs and class members a duty to exercise reasonable care in representing the safety of its dog and cat foods.

41. Defendants falsely represented that its dog and cat food was safe for consumption by dogs and cats.

42. In reality, defendants' dog and cat food caused dogs and cats to become ill and, in some cases, to die.

43. Plaintiffs and class members reasonably relied on the information provided by Defendants regarding the safety of its dog and cat food.

44. As a proximate cause of Defendants' false representations, Plaintiffs and other Class members suffered damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

45. IN THE ALTERNATIVE that Defendants' acts are not deemed intentional or reckless, Defendants' conduct was negligent insofar as they failed to take reasonable care to avoid causing Plaintiff and Class Members emotional distress in relation to the failure to warn and failure to produce safe food for nonhuman animal consumption. These actions or inactions caused Plaintiff and Class Members emotional distress. Said emotional distress was manifested by objective symptomology by some of the Class Members.

## SEVENTH CLAIM FOR RELIEF – NUISANCE

46. Defendants' behavior described above constitutes a private nuisance and public nuisance.

47. Under Washington law, specifically RCW 7.48.010 and 7.48.150 (private nuisance) and RCW 7.48.130 and RCW 7.48.210 (public nuisance), and similar anti-nuisance laws (at common law and by statute), Defendants are liable to plaintiffs for general damages sustained by virtue of their omission to perform a duty, which act, namely, allowing contaminated and poisoned food products to enter Plaintiff and Class Members' households under false pretenses of safety, resulting in pain, suffering, illness, and death to Class Members' companion animals, annoyed, injured, and endangered the comfort, repose, and safety of Plaintiffs and Class Members, essentially interfering in the comfortable enjoyment of their real and personal property and their lives.

## EIGHTH CLAIM FOR RELIEF – BREACH OF CONTRACT

48. Plaintiffs and Class members purchased dog and cat food produced by the defendants

CLASS ACTION COMPLAINT - 7

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

1   based on the understanding that the food was safe for their companion animals to consume.

2   49. The dog and cat food produced by the defendants was not safe for companion animals to
3   consume and caused dogs and cats to become ill or die. The unsafe nature of the pet food constituted a breach of contract.

4   50. As a result of the breach, Plaintiffs and Class members suffered damages which may
5   fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they
6   made the contract, as the probable result of the breach of it.

7   51. To the extent defendants' breach was reckless, wanton, or intentional and defendants
8   knew or had reason to know that, when the contract was made, breach would cause mental suffering for reasons other than pecuniary loss, defendants inflicted upon
9   Plaintiffs and Class members emotional distress.

10   ## NINTH CLAIM FOR RELIEF – GROSS NEGLIGENCE

11   52. In the event Defendants are not found to have acted recklessly, Plaintiffs and Class
12   Members plead IN THE ALTERNATIVE that Defendants knew and/or should have known that there was a strong possibility that harm would be inflicted on Plaintiffs and
13   Class Members as a result of their disregard in ensuring that safe foodstuffs entered the commercial dog and cat food supply, recalling the tainted product before the illness and
14   death toll rose further, and/or not warning consumers of the tainted product.

15   53. Defendants acted indifferently to the high degree of manifest danger and erroneous
16   destruction of sentient property, to wit, Class Members' companion animals, to which Plaintiffs and Class Members would be and was exposed by such conduct.

17   54. The proximate cause of Plaintiffs and Class Members' injuries was the grossly negligent
18   conduct of Defendants in the above regard.

19   ## TENTH CLAIM FOR RELIEF – PRODUCTS LIABILITY

20   55. Defendants are strictly liable under RCW 7.72.030 (and analogous products liability
21   statutes around the nation) for proximately causing harm to Plaintiffs by manufacturing a product that was not reasonable safe in construction.

22   56. The proximate cause of Plaintiffs and Class Members' injuries was the grossly negligent
23   conduct of Defendants in the above regard.

24   CLASS ACTION COMPLAINT - 8

25   ANIMAL LAW OFFICES OF
**ADAM P. KARP, ESQ.**
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

57. Defendants may also be liable for design defects in the production of the contaminated food, as well as failing to warn of the design and/or manufacturing defects, making them liable under RCW 7.72.030 (and analogous products liability statutes around the nation).

## RESERVATION OF RIGHTS

58. Plaintiffs and Class Members reserve the right to amend the complaint to include additional causes of action and allegations as they are discovered in the course of litigation.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

2. Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with defendants and their acts or omissions) and such other relief as provided by the statutes cited herein;

3. For economic damages, representing the intrinsic, special, peculiar, or unique value of the Plaintiffs and Class Members' injured and/or killed companion animals, subject to proof and modification at trial;

4. For special and general damages relating to loss of the Plaintiffs' and Class Members' companion animals' utility (e.g., companionship) from date of loss to date judgment is entered;

5. For noneconomic damages, including emotional distress, interference with the Plaintiffs and Class Members' lives, and the use and quiet enjoyment of their realty and personalty, loss and/or reduction of enjoyment of life, subject to proof and modification at trial;

6. For incidental and consequential damages arising from breach of contract;

7. For burial, afterdeath, and death investigation expenses;

8. For wage loss and other aftercare expenses incurred during the companion animals'

CLASS ACTION COMPLAINT - 9

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

convalescence;

9. Prejudgment and post-judgment interest on such monetary relief;

10. Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

11. Other appropriate injunctive relief;

12. The costs of bringing this suit, including reasonable attorneys' fees; AND

13. Such other relief as this Court may deem just, equitable and proper.

14. **NOTICE: Plaintiffs intend to seek damages in excess of $10,000. Accordingly, this case is not subject to RCW 4.84.250-.280.**

Dated this March 27, 2007.

ANIMAL LAW OFFICES

/s/ Adam P. Karp

Adam P. Karp, WSBA No. 28622
Attorney for Plaintiffs and Class Members
114 W. Magnolia St., Ste. 425
Bellingham, WA 98225
(888) 430-0001
Fax: (866) 652-3832
adam@animal-lawyer.com

CLASS ACTION COMPLAINT - 10

# EXHIBIT H

**LITE DEPALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma, Esq.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Phone: (973) 623-3000
Fax: (973) 623-0211

**RECEIVED**

**MAR 2 7 2007**

AT 8:30 ___8:0^___ M
WILLIAM T. WALSH, CLERK

**WEXLER TORISEVA WALLACE LLP**
Mark J. Tamblyn, Esq.
1610 Arden Way, Suite 290
Sacramento, California 95815
Phone: (916) 568-1100
Fax: (916) 568-7890

[Additional Counsel Listed on Signature Page]
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LARRY WILSON, on behalf of himself and :
all others similarly situated,

               Plaintiff,

        v.

MENU FOODS INCOME FUND, MENU :
FOODS, INC., a New Jersey corporation, :
MENU FOODS HOLDINGS, INC., and :
MENU FOODS MIDWEST :
CORPORATION, a Delaware corporation :

Defendants.

: Civil Action No.:

O7CV 1456(NLH)

**CLASS ACTION COMPLAINT**

     Plaintiff Larry Wilson ("Plaintiff"), individually and on behalf of all others

similarly situated, alleges by and through his attorneys, upon information and belief, as

follows:

131107 v1

## NATURE OF CASE

1.    Plaintiff brings this class action on behalf of himself and a class of
consumers and entities who purchased brands of pet food manufactured by Defendants
that caused pets to suffer severe illness or death. Pet owners, believing Defendants'
products to be safe for pet consumption, incurred substantial expenses relating to the
purchase of the pet food and to the veterinary monitoring and treatment that became
necessary after their pets consumed Defendants' pet food. Such expenses were even
more extreme for those pet owners whose pets became terminally ill after consuming
Defendants' pet food products. Such costs arose and were exacerbated by the undue
amount of time taken by Defendants to announce the dangers associated with its dog and
cat foods. Although Defendants knew that pet illnesses and deaths could be related to
their pet foods, Defendants waited for nearly a month before telling the public and the
Food and Drug Administration (FDA) that it was recalling its products. Defendants'
lethal products, and the companies' excessive delay in warning consumers and regulatory
agencies as to its dangers, resulted in significant financial loss to thousands of pet
owners.

## JURISDICTION AND VENUE

1.    The Court has original jurisdiction over this class action pursuant to 28 U.S.C.
§1332(d)(2).

2.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1)
because Plaintiff resides in this judicial district. Venue is also proper pursuant to 28
U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to
the claim occurred in this judicial district.

131107 v1

3. The members of the putative Class have suffered aggregate damages exceeding \$5,000,000, exclusive of interest and costs.

## PARTIES

4. Plaintiff Larry Wilson resides at 1230 South Avenue Lodi, CA 95240.

5. Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

6. Defendant Menu Foods Holdings, Inc. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware.

7. Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. Menu Foods, Inc. is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

8. Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

9. Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods Holdings, Inc., Menu Foods, Inc., and Menu Foods Midwest Corporation are collectively referenced as "Defendants."

10. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

## FACTUAL ALLEGATIONS

11. Defendants manufacture and sell pet food internationally and are the biggest

131107 v1

supplier of pet food in North America.

12. Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

13. Defendants sell their brands internationally and in some of the largest major retail chains in the United States, such as Wal-Mart, Safeway, Kroger, PetSmart and Meijer.

14. On March 16, 2007, Defendants, in conjunction with the Food and Drug Administration (FDA), announced a massive immediate recall of approximately 60 million containers of "cuts and gravy" pet food (pet food consisting of pieces of meat in gravy) throughout the United States based on widespread reports of pet illness and death, mostly related to kidney failure. The recall covers all "cuts and gravy" we pet food produced and distributed by Defendants, including over ninety different brands of dog and cat food. Some of the brands recalled include, Iams, Eukanuba, Best Choice, Paws, and Nutro Max. Defendants' recall is the largest pet food recall in United States history.

15. However, Defendants waited an excessive period of time before deciding to recall its harmful and lethal products. Defendants first started receiving complaints of pet illnesses and deaths as early as late-February, almost a full month before deciding to recall its products. *See, e.g.*, CBSNews.com, *Pet Food Co. Knew of Problem Last Month*, March 20, 2007, *at*

http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last viewed March 22, 2007). Rather than announcing its products could be harmful to pets as soon as it learned of pet illnesses and deaths, Defendants decided to conduct its own testing. Defendants conducted tests involving over 50 animals to observe reactions to its pet foods. Approximately one in six of the animals tested died. Yet, Defendants again waited until as many as seven test subjects died after eating its pet food before finally submitting its findings to the FDA and deciding that a recall and announcement to the

131107 v1

public would be necessary.

16. Due in no small part to this unnecessary and protracted delay, as of March 21, 2007 there have been at least seventy-two reported pet deaths from kidney failure nationwide and additional deaths continue to be reported by the hour. One source indicated that 1,715 dogs and cats were either sick or dead as a result of the recalled food products. *See* http://www.petconnection.com/blog/ (last viewed March 22, 2007).

17. Pet owners purchased Defendants' products believing them to be safe for pet consumption and beneficial to their pets. However, the "cuts and gravy" style pet food that pet owners across the nation have fed their pets has proved to be toxic, causing renal failure in cats and dogs as well as physical disorders such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

18. Pet owners have incurred substantial expenses relating both to the purchase of Defendants' pet food and from the medical costs associated with monitoring and treating pets who have consumed, or were thought to have consumed, Defendants' contaminated food products. Indeed, several pet owners have accrued veterinary bills that have climbed into the several thousands of dollars. Furthermore, for those pet owners whose pets became terminally ill, they were forced to incur additional costs relating to their pets death, such as euthanizing and, for some, burying or cremating their pet.

19. Currently, Defendants still have not identified the cause of the food toxicity. However, aminopterin, a substance found in rat poisons, was recently discovered in the recalled foods.

20. In addition, pet owners who have become increasingly concerned about their pet's health after learning of the recall have received little to no relief from Defendants. Defendants have failed to manage the high volume of incoming complaints. Since instituting the recall, pet owners have been largely unable to reach Defendants' customer service representatives, often encountering busy signals or voicemail messages. *See, e.g.,*

Thejournalnews.com, *Pet Owners Growling over Food Recall*, March 20, 2007, *at*
http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS01/70
3200345/1066 (last viewed March 22, 2007). To be sure, Defendants have been
criticized for not being cooperative with customers, for not getting helpful information
out to the public sooner and for failing to "get control of the crisis . . . employ[ing] a
bunker mentality in times of trouble." Joseph R. Perone, The Star-Ledger, *Menu Foods
Fails Test in Crisis Management*, March 21, 2007, *available at*
http://www.nj.com/starledger/stories/index.ssf?/base/business-
6/117445554784980.xml&coll=1 (last viewed March 23, 2007).

    21.  Since the recall, Defendants have received scores of complaints and
questions from consumers who have purchased its contaminated pet food products and
from those whose pets have become ill or died after consuming those products.

    22.  The complaints found throughout the Internet and in many of the news
stories mentioned above each contain the same common theme of consumers who
unwittingly purchased Defendants' food products and who were forced to take their pets
to veterinarians for medical treatment after their pets became extremely, and sometimes
terminally ill.

    23.  Plaintiff Larry Wilson purchased and fed *Special Kitty* brand wet pet food to
his cat, Simon. *Special Kitty* is a brand of cat food recalled by Defendants.

    24.  After eating the cat food, Simon became noticeably ill. Mr. Wilson admitted
Simon to a veterinarian for diagnosis and treatment, where it was discovered that Simon
was suffering from kidney failure.

    25.  In order to treat Simon's failing renal system, a veterinarian began
administering fluids to Simon intravenously and is continuing to monitor Simon's
condition.

    26.  Simon's diagnosis, treatment and monitoring cost Mr. Wilson over $2,000 in
two days. The veterinarian caring for Simon has suggested placing Mr. Wilson's cat on

131107 v1

dialysis for further treatment. However, this would cost Mr. Wilson an additional three to four thousand dollars – an amount Mr. Wilson cannot afford to pay.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of himself and all others similarly situated as members of the following class (the "Class"): All persons and entities that purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

28. Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint. Specifically excluded are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

29. **Numerosity**. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class contains tens of thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

30. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a.     Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

b.     Whether Defendants failed to properly test their "cuts and gravy" style dog and cat food before market entry of such food;

c.     Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of its "cuts and gravy" style dog and cat food;

d.     Whether Defendants' recall is adequate and properly notifies potentially affected consumers;

e.     Whether Defendants have been unjustly enriched as a result of their conduct, as alleged herein; and

f.     Whether Plaintiff and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages.

31. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff and each member of the Class purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

32. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

33. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not.

131107 v1

Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

34. In the alternative, the Class may be certified because:

    a.   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

    b.   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    c.   Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

35. Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

36. Defendants benefited from the sale of its "cuts and gravy" style dog and cat food to Plaintiff and the Class. The benefit to Defendants can be identified from the sale of such pet food to Plaintiff and the Class and that such monies can be restored to Plaintiff and the Class. Such monies are the property of the Plaintiff and the Class. All or a portion of this benefit retained by Defendants is money in which Plaintiff and the

131107 v1

Class have an ownership interest. Plaintiff and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF

### [Negligence]

37.  Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

38.  Defendants owed a duty to Plaintiff and the Class to provide pet food safe and suitable for pet consumption.

39.  Through their failure to exercise due care, Defendants were negligent in manufacturing, distributing, marketing and selling pet food to Plaintiff and the Class.

40.  Defendants failed to implement adequate quality control and adequate testing of its pet food that they introduced into the stream of commerce for sale to Plaintiff and the Class and for consumption by their pets.

41.  Defendants knew, or should have known, that their pet food, as described above, presents an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

42.  The losses and damages described herein were foreseeable and avoidable.

43.  Defendants' negligence proximately caused the losses and damages to Plaintiff and the Class.

## SECOND CLAIM FOR RELIEF

### [For Unjust Enrichment]

44.  Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

131107 v1

45. Defendants have received, and continue to receive, a benefit at the expense of Plaintiff and members of the Class. Defendants have knowledge of this benefit.

46. Defendants have charged and collected from consumers, including Plaintiff and members of the Class, money for dog and cat food that endangers the lives of their pets. Defendants thus have received benefits that they have unjustly retained at the expense of Plaintiff and members of the Class.

47. As a direct and proximate result of Defendants' unlawful acts and conduct, Plaintiff and members of the Class were deprived of the use of their monies that was unlawfully charged and collected by Defendants, and are therefore entitled to restoration of their monies.

## THIRD CLAIM FOR RELIEF

### [Breach Of Express Warranty]

48. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

49. Defendants expressly warranted that their "cuts and gravy" style pet food was suitable and safe for pet consumption.

50. Defendants also expressly warranted that "it manufacturer[s] the private-label wet pet-food industry's most comprehensive product program with the highest standards of quality."

51. Plaintiff and the Class were induced by Defendants' marketing, advertising, promotion and labeling of the pet food as suitable "food" to rely upon such express warranty, and, in fact, relied upon the untrue warranty in purchasing the recalled pet food and feeding it to their pets.

52. Plaintiff and the Class were damaged as a proximate result of Defendants' breach of their express warranty.

131107 v1

## FOURTH CLAIM FOR RELIEF

### [Breach Of Implied Warranty]

53.  Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein.  Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

54.  Defendants are merchants under section 2-104 and 2-314 of the Uniform Commercial Code.

55.  Through their marketing, advertising, promotion and labeling of their "cuts and gravy" style pet food, Defendants impliedly warranted that such pet food was fit for the ordinary purpose for which it was intended, including to safely nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform Commercial Code.

56.  Through their marketing, advertising, promotion and labeling, Defendants knew that Plaintiff and the Class would purchase their pet food for the ordinary purpose of providing nourishment to their pets.

57.  Defendants manufactured, distributed, marketed, advertised, promoted and sole their pet food for the ordinary purpose for which it was purchased by Plaintiff and the Class.

58.  Plaintiff and the Class relied upon Defendants' representations and warranties, and purchased and used Defendants' pet food for the ordinary purpose for which it was sold.

59.  Defendants' pet food purchased by Plaintiff and the Class were unfit for their ordinary purpose when sold.  Such food was sold while presenting a risk of risk of illness or death to pets.  Defendants have accordingly breached the implied warranty of merchantability by selling such unfit pet food.

60.  Plaintiff and the Class were damaged as a proximate result of Defendants' breach of warranty.

131107 v1

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

1.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the Class;

2.  For restitution, disgorgement and/or other equitable relief as the Court deems proper;

3.  For compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendants' unlawful acts and conduct;

4.  For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

5.  For pre-judgment and post-judgment interest;

6.  For reasonable attorneys' fees and costs of suit, including expert witness fees; and

7.  For such other and further relief as this Court may deem just and proper.

131107 v1

## JURY DEMAND

To the full extent available, Plaintiff demands a trial by jury.

Dated: March 27, 2007

By: _____

JOSEPH J. DEPALMA
**LITE DEPALMA GREENBERG &**
**RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000
Facsimile: (973) 623-0211

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Stuart C. Talley
**KERSHAW, CUTTER, & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

*Attorneys for Plaintiff and the Class*

131107 v1

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff, by his attorneys, hereby certifies that to the best of his knowledge, the matter in controversy is related to Paul Richard and Jennifer Richard, husband and wife, Charles Kohler and Alicia Kohler, husband and wife, v. Menu Foods Income Fund, a Canadian open-ended trust, Menu Foods Limited, a Canadian corporation, Menu Foods Holdings, Inc., a Delaware corporation, Menu Foods, Inc., a New Jersey corporation, Menu Foods Midwest corporation, a Delaware corporation, Menu Foods South Dakota, Inc., a Delaware corporation, ABC partnerships, XYZ corporations, filed in the District of New Jersey on March 27, 2007. Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the fore going statements made by me are wilfully false, I am subject to punishment.

Dated: March 27, 2007                          By: _____

                                               JOSEPH J. DEPALMA
                                               **LITE DEPALMA GREENBERG &**
                                               **RIVAS, LLC**
                                               Two Gateway Center, 12th Floor
                                               Newark, New Jersey 07102
                                               (973) 623-3000

131107 v1

RECEIVED

MAR 2 7 2007

AT 8:30 ___
WILLIAM T. WALSH, CLERK

**LITE DePALMA GREENBERG & RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: 973-623-3000

**Attorneys for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Larry Wilson, on behalf of himself and all others similarly situated, ) <br><br> Plaintiffs, ) <br> v. ) <br><br> Menu Foods Income Fund, Menu Foods, Inc., a New Jersey Corporation; Menu Foods Holdings, Inc. and Menu Foods Midwest Corporation, a Delaware Corporation, ) <br><br> Defendant. ) | Civil Action No. <br><br> **CERTIFICATE OF** <br> **NON-ARBITRABILITY** |

Joseph J. DePalma, of full age, certifies that pursuant to L. Civ. R. 201.1 the within

matter is not arbitrable, being that the Complaint seeks damages that are in an excess of $150,000

and injunctive relief.

Dated:  March 27, 2007

_____
Joseph J. DePalma

131109 v1